992 F.2d 27
 120 A.L.R.Fed. 689, 61 USLW 2659, 125
Lab.Cas. P 10,637,
8 IER Cases 577
 Eugene R. MOORE, Laurie J. Evans, and Dennis W. McClure, for
themselves and other persons similarly situated
v.
The WAREHOUSE CLUB, INC.
Eugene R. Moore, Appellant.
 No. 92-3502.
 United States Court of Appeals,
Third Circuit.
 Argued March 3, 1993.
Decided April 15, 1993.
 
 1
 Joseph S. Hornack (argued), Healey, Davidson & Hornack, Pittsburgh, PA, for appellant.
 
 
 2
 Janet E. Goldberg (argued), Sachnoff & Weaver, Ltd., Chicago, IL, Sidney Zonn, Buchanan Ingersoll Professional Corp., Pittsburgh, PA, for appellees.
 
 
 3
 Before: BECKER and GREENBERG, Circuit Judges, and ROBINSON, District Judge.*
 
 OPINION OF THE COURT
 
 4
 SUE L. ROBINSON, District Judge.
 
 
 5
 This appeal focuses on certain provisions of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S .C. §§ 2101 et seq., which require that notice be given to employees prior to any "plant closing" which involves an "employment loss" to 50 or more full-time employees. The district court, adopting in part the magistrate judge's report and recommendation, granted the defendant employer's motion for summary judgment. The court found that fewer than 50 full-time employees suffered an "employment loss" within the meaning of WARN and, therefore, concluded that the statute's notice requirement was not triggered when defendant The Warehouse Club, Inc. ("Warehouse Club") closed its store located in North Versailles, Pennsylvania. We will affirm.
 
 I. FACTUAL AND PROCEDURAL HISTORY
 
 6
 On September 8, 1990, defendant Warehouse Club sent a letter to its customers informing them that its North Versailles store would be closed to the public after September 10, 1990. The employees of the North Versailles store were not notified of the closing until September 11, 1990, when they reported to work. At that time, all employees were given notice of the store's closing, as well as information concerning their employment status, by way of a letter, which included the following statement:
 
 
 7
 If you are interested in assisting in the work to complete the closure of your location (estimated time of 3-4 weeks) or if you are interested in continuing your employment with Warehouse Club at another location, please complete the attached form and return it immediately to your manager.... Wherever possible, we will attempt to accommodate your desire to continue working with Warehouse Club. Positions will be filled based, of course, on availability of open positions and also on past performance in the same or similar positions with Warehouse Club.
 
 
 8
 Three North Versailles employees filed a putative class action against Warehouse Club alleging that it failed to comply with WARN's notice requirement. According to plaintiffs, 52 full-time employees suffered an employment loss as a result of the North Versailles store's closing. In their motion for summary judgment, plaintiffs argued that defendant Warehouse Club was required under WARN, 29 U.S.C. § 2101(a), to inform its employees of their employment loss 60 days prior to such loss, i.e., 60 days prior to the store's closing. Contrary to plaintiffs' assertions, the magistrate judge and district judge concluded that the number of employment losses at the North Versailles location fell short of the threshold amount and, therefore, granted Warehouse Club's cross-motion for summary judgment.
 
 
 9
 On appeal, the parties once again focus on whether particular employees should be included among those full-time employees who suffered an employment loss.[1] Since appellant Moore has now conceded that one of the 52 employees, Brett Norowski, did not suffer an employment loss, as that term is defined in 29 U.S.C. § 2101(a)(6), appellee Warehouse Club need only establish that two of the remaining workers be excluded from the total number of affected employees. Therefore, the discussion below focuses, as did the parties on appeal, on the status of four employees: 1) Lucinda Underwood and Jeffrey Faulisi ("Underwood and Faulisi"), who accepted positions on September 11, 1990, with another Warehouse Club store located in Bridgeville, Pennsylvania, and transferred to this store without a break in employment; and 2) Nancy Jackson ("Jackson") and Lisa Duda ("Duda"), who were found to be "part-time employees" by the district court.[2]
 
 II. DISCUSSION
 
 10
 The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. This court has appellate jurisdiction over the final order of the district court pursuant to 28 U.S.C. § 1291.
 
 
 11
 This court's review of a grant of summary judgment is plenary. Philadelphia and Reading Corp. v. United States, 944 F.2d 1063, 1070 (3d Cir.1991). An appellate court applies the same test as the district court summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The relevant facts in this case are essentially undisputed. Therefore, we turn our attention to the application of WARN's statutory provisions to the facts.
 
 
 12
 WARN requires that all employers of 100 or more employees provide 60 days prior notice of employment loss caused by a "mass layoff" or "plant closing." 29 U.S.C. § 2101(a).[3] A plant closing is defined as the "permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2).
 
 An "employment loss" is defined as:
 
 13
 (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period....
 
 
 14
 29 U.S.C. § 2101(a)(6). The term "employment termination" is not defined in the statute. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The ordinary meaning of the word "terminate" in an employment context is defined as follows: "To discontinue the employment of." The American Heritage Dictionary, 2nd Edition 1254 (1982).
 
 
 15
 The Act provides that certain employees be excluded from those considered to have experienced an "employment loss." For instance,
 
 
 16
 [n]otwithstanding subsection (a)(6) of this section, an employee may not be considered to have experienced an employment loss if the closing or layoff is the result of the relocation or consolidation of part or all of the employer's business and, prior to the closing or layoff--
 
 
 17
 (A) the employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6-month break in employment; or
 
 
 18
 (B) the employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6-month break in employment, and the employee accepts within 30 days of the offer or of the closing or layoff, whichever is later.
 
 
 19
 29 U.S.C. § 2101(b)(2). Likewise, "an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required," 29 U.S.C. § 2101(a)(8), is considered a "part-time" employee and, thus, not included among those employees who are deemed to have suffered an "employment loss." 29 U.S.C. § 2101(a)(2).
 
 A. Transferred Employees
 
 20
 Appellant argues that the district court should have included Underwood and Faulisi among those employees suffering an employment loss. Appellant's argument is based on WARN's provision that an employee may not be considered to have experienced an employment loss if the employer, "prior to the closing or layoff," offers to transfer the employee to another employment site. 29 U.S.C. § 2101(b)(2). According to appellant's analysis, the "plant" (i.e., the North Versailles store) closed on September 11, 1990. Because appellee extended its offer to transfer on the date of closing, rather than prior to the closing, appellant contends that employees Underwood and Faulisi, who accepted the offer to transfer and secured new positions on September 11, 1990, nevertheless should not be excluded under 29 U.S.C. § 2101(b)(2).
 
 
 21
 By focusing on the timing of the transfer offer[4] rather than on the critical issue of whether the employees experienced an employment loss in the first instance, appellant overlooks the underlying purpose of the statute as well as basic tenets of statutory construction. There is hardly a need to ensure adequate opportunities (by way of notice of imminent employment loss) for retraining and/or reemployment in the absence of employment loss. Similarly, there is no need to consider the enumerated exclusion to a defined term, here, "employment loss," when the defined term is inapplicable to the facts of record.
 
 
 22
 Underwood and Faulisi never experienced an employment loss. Rather, they continued to be employees of Warehouse Club, albeit in different positions at another location. The plant closing, therefore, had no effect on their employment status and WARN's notice provisions have no application as to them.
 
 B. Part-Time Employees
 
 23
 Appellant also asserts that two employees, Nancy Jackson ("Jackson") and Lisa Duda ("Duda"), should be considered full-time employees who suffered an "employment loss." As noted above, the statute explicitly excludes part-time employees from the defined term "employment loss." An employee is considered part-time if she is employed "for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).
 
 1. Nancy Jackson
 
 24
 First, with respect to Nancy Jackson, appellant contends that although Nancy Jackson concededly worked less than "6 of the 12 months preceding the date on which notice is required," she should nonetheless be classified as a full-time employee. On December 3, 1989, Warehouse Club terminated Jackson for alleged misconduct. Jackson subsequently filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and eventually entered into a no-fault settlement agreement with Warehouse Club. Warehouse Club agreed to reinstate Jackson to her former position, but did so only on the express condition that Jackson complete a 60-day probationary period during which time she would be treated as "any new employee."
 
 
 25
 Appellant's entire argument with respect to Jackson is predicated upon Warehouse Club's "alleged discrimination." Appellant argues that the goal of Title VII and other employment discrimination statutes is to make the victim of employment discrimination "whole" and that Jackson cannot be made whole if she is deprived of full-time status. Given the existence of the no-fault settlement agreement, however, there is no evidence of record that Warehouse Club discriminated against Jackson. Moreover, by such agreement, Jackson explicitly acquiesced to her status as a "new employee" and to undergo a 60-day probationary period. Therefore, she cannot be deemed a full-time employee for purposes of the WARN notice provisions.
 
 2. Lisa Duda
 
 26
 Appellant concedes that Lida Duda did not average over 20 hours a week during the most recent 90 days. Appellant nonetheless argues that the average hours should be calculated based only on those days (56) out of the most recent 90 days during which Duda actually worked.
 
 
 27
 The Department of Labor regulations set forth the relevant period to consider in determining whether an employee has worked "an average of fewer than 20 hours per week" as "the shorter of the actual time the worker has been employed or the most recent 90 days." 20 C.F.R. § 639.3(h). In the present case, when looking to Duda's most recent 90 days,[5] her average hours fall below the 20-hour minimum.
 
 
 28
 Appellant argues that Duda is a "seasonal employee" and, thus, the 90-day calculation for Duda should include only those days which she actually worked. Appellant's argument fails on two grounds. First, there is no evidence of record supporting the contention that Duda is in fact a "seasonal employee."[6]
 
 
 29
 Second, even if Duda were deemed a seasonal employee, appellant's argument that the 90-day calculation for seasonal employees should include only those days actually worked is unsupported by the statute or the regulations. The regulations discuss seasonal employees to the limited extent that such workers may be included within the term "part-time employee."[7] The regulations do not set forth any guidelines for allowing seasonal employees to be classified as full-time employees based upon the nature of their work schedules and certainly do not require that only actual days worked be considered in the "most recent ninety day" calculation.
 
 
 30
 Accordingly, all 90 days are to be considered in calculating Duda's average number of hours. In so doing, the number of hours falls short of the required 20-hour per week minimum.
 
 III. CONCLUSION
 
 31
 In view of the aforesaid, we will affirm the district court's order granting Warehouse Club's motion for summary judgment.
 
 
 
 *
 Honorable Sue L. Robinson, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 Because the notice of appeal here stated only that "Eugene R. Moore, et al. appeals," we have no jurisdiction over any plaintiff other than Eugene R. Moore. The phrase "et al." is not adequate to satisfy the requirement of Fed.R.App.P. 3(c) that a notice of appeal must "specify the party or parties taking the appeal...." Torres v. Oakland Scavenger Co., 487 U.S. 312, 317-18, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). Nor was another document, serving as the functional equivalent of a notice of appeal, filed within the period required for a timely notice of appeal. See, e.g., In re Paoli R.R. Yard PCB Lit., 916 F.2d 829, 837-38 (3d Cir.1990) (letter sent to the clerk and copied to counsel detailing the parties to the appeal and filed within the period required for a notice of appeal is adequate to satisfy the requirements of Fed.R.App.P. 3(c)). Since there is no jurisdiction over a party who was not noted on the notice of appeal (or on some functional equivalent), we lack jurisdiction over any plaintiff but Moore. See Torres, 487 U.S. at 315, 108 S.Ct. at 2407-08
 
 
 [2]
 Although the district judge found that it was unnecessary to review the findings concerning part-time employees, since the exclusion of three other employees (Norowski, Underwood, and Faulisi) already brought the total number of employees below 50, we have undertaken the review to more fully address appellant's contentions
 
 
 [3]
 Any employer who orders a plant closing without the required prior notice "shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing ... [for] back pay for each day of violation...." 29 U.S.C. § 2104(a)
 
 
 [4]
 A review of the relevant legislative history indicates that an earlier version of the transfer exclusion required the transfer offer to be made "prior to employment termination or layoff," rather than "prior to the closing or layoff." See, H.R.Cong.Rep. No. 576, 100th Cong.2nd Sess., Subtitle E at 1047 (1988). The problem, of course, with the latter, present language is that the date of plant closing is not necessarily easy to determine. The statutory definition of "plant closing" contemplates not a date certain, but a window of time spanning a 30-day period in which 50 or more full-time employees suffer an employment loss. In order to determine whether 50 or more employees suffer an employment loss within a 30-day period, however, one has to assign a starting point (i.e., the date of plant closing) for the 30-day period. This circular analysis is not illuminated by the relevant Department of Labor regulations, which provide that an "employment action that results in the effective cessation of production or the work performed by a unit, even if a few employees remain, is a shutdown." 20 C.F.R. § 639.3(b). Where, as here, an employment site closes to the public but the majority of the employees continue to report to work for a period of time, it is difficult to determine when a "cessation of production" occurred for purposes of determining the date of "plant closing." Although the district court followed this circuitous analytical path to a conclusion, for the reasons given above, we leave for another day and another court the task of circumnavigating the statutory scheme in this regard
 
 
 [5]
 The regulations viewed in combination with the statutory language seem to require that the most recent 90 days be calculated from the time notice is required (60 days prior to plant closing). In this case, Duda's average falls below twenty hours whether the figure is calculated in the 90 days prior to the date notice is required or in the 90 days prior to the date of plant closing
 
 
 [6]
 In an affidavit, Jeanne Vitous, Duda's manager, testified as follows:
 
 
 [5]
 Lisa Duda was cashier at the Front-End. She already was working at Warehouse Club at the time I became the Front-End Manager. During part of the time I supervised Lisa Duda (from approximately September 1989 to September 1990) she was attending Indiana University (in Pennsylvania). Lisa Duda's work schedule at Warehouse Club was set up to accommodate her school and personal schedule. For example, she would not work for weeks or even a month at a time. Then if she had the time, we would schedule her for as many hours as she wanted. Lisa's hours varied completely at her convenience
 
 
 [6]
 I also recall that during the summer of 1990, before the North Versailles location was closed, Lisa Duda asked that she not be put on the schedule for several weeks--I believe it was 4 weeks. Lisa said she wanted to go on a vacation, and as I recall, she was gone approximately 4 weeks
 
 
 [7]
 Lisa Duda was not a seasonal employee as I understand that term. She did not work any particular seasons for us, nor was she called in because it was our busy season. She was not terminated or laid off and then rehired based upon our need for her services. Rather, she worked when she felt she had the time based upon her other commitments e.g. school schedule. During the time I supervised her, she had no fixed schedule[ ], but rather constantly changed her schedule
 Appendix at 76a.
 
 
 [7]
 The regulations provide that the term part-time employee "may include workers who would traditionally be understood as 'seasonal' employees." 20 C.F.R. § 639.3(h)