Renecia JOHNSON, Lorraine Kennedy, and Lynette Addison, individually and on behalf of all others similarly situated, Plaintiffs,

v.

TELESPECTRUM WORLDWIDE, INC., a Delaware Corporation, Defendant.

Civil Action No. 97–433 LON.

United States District Court, D. Delaware.

July 27, 1999.

117

118

Joseph M. Bernstein, Wilmington, DE, for plaintiffs.

Tara L. Lattomus, Pepper Hamilton, Wilmington, DE, Michael J. Ossip, and Edward S. Mazurek, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant.

## OPINION

LONGOBARDI, Senior District Judge.

### I. INTRODUCTION

Plaintiffs filed this action under the provisions of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101–2109. The Complaint alleges that TeleSpectrum Worldwide, Inc. ("TeleSpectrum") violated the WARN Act when it shut down its operations in Wilmington, Delaware on July 22, 1997, without providing the affected employees with the advance notice required by the WARN Act. Defendant has denied liability, maintaining that the circumstances did not mandate its compliance with the WARN Act. On December 23, 1997, the Court granted Plaintiffs' Motion for Class Certification. (Docket Item "D.I." 14). The class consists of all persons employed by TeleSpectrum who were affected employees and who were subjected to an employment loss as a result of TeleSpectrum's alleged violation of the WARN Act. Both parties have completed discovery, and have filed cross motions for summary judgment. Also pending is plaintiffs' Motion to Bifurcate Proceedings, which defendant does not oppose.

### II. FACTS

Defendant is headquartered in King of Prussia, Pennsylvania. It is in the business of providing telemarketing services to other companies. These services are provided through a network of call centers throughout the United States. Defendant notified the employees at its Wilmington site on July 8, 1997, that the site would be closed on July 22, 1997. This notification read as follows: "TeleSpectrum Worldwide Inc. has decided to consolidate its operations in the Mid–Atlantic region. Effective July 22, 1997, the Delaware facility will be closed. Managers and Associates will have the opportunity to move to other facilities in Pennsylvania and Maryland. TeleSpectrum has made an investment in you, and we want you to remain with the company if you so desire." (D.I. 45 at A–53). Many of the other facts are in dispute and will be set forth as necessary below.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine

only if a reasonable jury could find for the nonmoving party. *Id.*

While the moving party has the initial burden to identify evidence that demonstrates the absence of a genuine issue of material fact, once that burden has been met, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Credibility determinations are not the function of the judge; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

"The standards are the same where, as here, both parties have moved for summary judgment. 'When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56.' *Dan Barclay, Inc. v. Stewart & Stevenson Serv. Inc.,* 761 F.Supp. 194, 197–98 (D.Mass.1991) (citing 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure,* § 2720 (2d ed.1983)). The court may not resolve genuine issues of material fact on cross-motions for summary judgment. *See Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. and Urban Dev.,* 768 F.2d 5, 11–12 (1st Cir.1985)." *New England Health Care Employees Union v. Fall River Nursing Home, Inc.,* No. CV–96–12216–PBS, 1998 WL 518188, at *4 (D.Mass. July 30, 1998).

## IV. WARN ACT

The WARN Act requires that all employers of 100 or more employees provide 60 days prior notice of employment loss caused by a "mass layoff" or "plant closing." 29 U.S.C. § 2102 (1999).[1] A plant closing is defined as the "permanent or temporary shutdown of a single site of employment . . . if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees."[2] 29 U.S.C. § 2101(a)(2). An employment loss is defined as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a lay-off exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." 29 U.S.C. § 2101(a)(6). Finally, there is one relevant exclusion from the definition of employment loss: "an employee may not be considered to have experienced an employment loss if the closing or layoff is a result of the relocation or consolidation of part or all of the employer's business and, prior to the closing or layoff—(A) the employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6 month break in employment; or (B) the employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6–month break in employment, and the employee accepts within 30 days of the offer or the closing or layoff, whichever is later." 29 U.S.C. § 2101(b)(2).

## V. DISCUSSION

Plaintiffs contend that they are entitled to summary judgment. They allege that the evidence establishes a prima facie violation of the WARN Act, and that defen-

---

1. Any employer who orders a plant closing without the required prior notice "shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing ... [for] back pay for each day of violation...." 29 U.S.C. § 2104(a).

2. Part-time employees are those who are "employed for an average of fewer than 20 hours per week or who [have] been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

dant is not entitled to avail itself of the defense to liability based on the "offer to transfer" exclusion of 29 U.S.C. § 2101(b)(2). More specifically, plaintiffs contend that the closure was not the result of a relocation or consolidation of business, and that no offer to transfer was made. Additionally, they maintain that if an offer was made, it was not within a reasonable commuting distance.

Defendant also argues that it is entitled to summary judgment. It alleges that plaintiffs cannot prove that at least 50 employees, exclusive of part-time employees, suffered an employment loss. Therefore, there was no plant closing as defined by the WARN Act and the notice requirement does not apply. Alternatively, defendant contends even if 50 or more employees became unemployed, it still had no obligations under the WARN Act because no employment loss within the meaning of the Act occurred. Specifically, defendant maintains that because the plant was closed as a result of a relocation or consolidation, and the employees were all offered transfers to other facilities within a reasonable commuting distance, there was no employment loss, and therefore no WARN Act liability.

A. Burden of Proof

As a threshold matter, the parties have opposing views on who has the burden of proof. As to the relevant WARN Act provisions in this case, this is a matter of first impression in this circuit; however, case law from other districts is helpful to the determination. Plaintiffs have the burden to prove their prima facie case. *See, e.g., May v. Shuttle, Inc.,* 129 F.3d 165, 174 (D.C.Cir.1997) (holding that plaintiff must show that a mass layoff occurred); *Hooper v. Polychrome, Inc.,* 916 F.Supp. 1111, 1118 (D.Kan.1996) ("plaintiff bears the burden of proof to show that the threshold requirements for application of the WARN Act have been met"); *McClain*

*v. Laurel Street Art Club, Inc.,* 925 F.Supp. 496 (E.D.Ky.1995) (holding plaintiff has burden of proof as to whether defendant's two facilities constituted a single site of employment). In order to prove their prima facie case, plaintiffs must show that a plant closing occurred within the definitions set forth in the WARN Act. That entails demonstrating that (1) there are 50 employees, not including part-time employees, (2) at a single site of employment, (3) who suffered an employment loss.[3] Specifically, plaintiffs must demonstrate that there are 50 employees, exclusive of those who average less than 20 hours a week, and exclusive of those who had been employed for fewer than 6 of the 12 months preceding the date on which notice was required. 29 U.S.C. § 2101(a)(8). To show that the 50 employees suffered an employment loss, plaintiff must show that the employees suffered a termination, other than a discharge for cause, voluntary departure, or retirement. 29 U.S.C. § 2101(a)(6).

Defendant maintains that plaintiffs must also demonstrate that TeleSpectrum did not fall within the offer to transfer exclusion of § 2101(b)(2) as part of their prima facie case. Plaintiffs allege that this exclusion is an affirmative defense, and therefore it is defendant's burden to demonstrate its compliance.[4] 29 U.S.C. § 2102(b) provides for three exemptions from the WARN Act, which reduce or obviate the notification period. These are the faltering company exemption, the unforeseeable business circumstance exemption, and the natural disaster exemption. Defendant concedes that these are all affirmative defenses. *See* 20 C.F.R. § 639.9 (1998) ("The employer bears the burden of proof that conditions for the exceptions have been met"). Defendant contends that because the affirmative defenses are clearly delineated in Section 2102(b), and the offer to transfer exclusion from the

---

3. There is no dispute that this case involves a single site of employment.

4. In defendant's Answer (D.I.6), this exclusion was pleaded as its second affirmative defense.

definition of employment loss is contained in Section 2101(b)(2), it therefore is not an affirmative defense, but rather part of the plaintiffs' prima facie case. The Court does not agree with this proposition. Although there is no congressional or judicial guidance on this point, the Court holds that the transfer exclusion is an affirmative defense, which the defendant may assert to avoid WARN Act liability if the plaintiffs have proved their prima facie case.

■■■ The purpose of the WARN Act is to "provide protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs." 20 C.F.R. § 639.1(a) (1998). Advance notice allows workers and their families transition time to adjust to the prospective loss of employment, seek and obtain alternative jobs, and if needed, enter skill training or retraining programs that will allow them to successfully compete in the job market. See id. The purpose of the Section 2102 exemptions is to provide for situations when the WARN Act notice provisions do not apply, by striking a balance between protection for employees and the legitimate business concerns of an employer faced with unforeseeable business circumstances. The purpose behind the transfer exclusion is similar. When the transfer exclusion is met, the employees have suffered no employment loss, because they have turned down a continued offer of employment, making their employment loss voluntary. Accordingly, the transfer exclusion also strikes a balance between protecting the employee, and curtailing liability for an employer who seeks to continue its relationship with the employee. It would be an anomalous result to treat the Section 2102(b) exemptions as affirmative defenses, while treating the Section 2101(b)(2) exclusion as part of the plaintiffs' prima

facie case. See, e.g., Teamsters Nat. Freight Industry Negotiating Committee v. Churchill Truck Lines, Inc., 935 F.Supp. 1021, 1026 n. 12 (W.D.Mo.1996) ("The 'exceptions' of the WARN Act, including the 'business circumstance exception,' are treated as affirmative defenses; thus the employer has the burden to prove that its actions are covered by the exception. See 20 C.F.R. § 639.9. Absent authority to the contrary, we assume that the employer also bears the burden of proof with respect to the 'strike exemption' [29 U.S.C. § 2103(1)]."). This Court makes the same assumption regarding the offer to transfer exclusion. Therefore, it is defendant's burden to demonstrate that the elements of the offer to transfer exclusion have been met. These elements are: (1) the layoff is a result of a relocation or consolidation of part or all of the employer's business; and (2) the employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6-month break in employment; or the employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6-month break in employment, and the employee accepts within 30 days of the offer or the closing or layoff, whichever is later. See 29 U.S.C. § 2101(b)(2).

### B. Prima Facie Case

Defendant alleges that plaintiffs cannot prove their prima facie case, because they cannot show that there was a plant closing. More specifically, it maintains that plaintiffs cannot demonstrate that 50 or more employees, excluding part-time employees, suffered an employment loss after the shutdown.[5]

■■■ WARN Act notification is only triggered when a plant closing occurs. To demonstrate that a plant closing occurred, plaintiffs must prove that 50 or more em-

---

**5.** Both parties agree that employees who accepted work at other TeleSpectrum call centers did not suffer an employment loss and do not count towards the 50 employees needed to trigger liability.

ployees, exclusive of part-time employees, suffered an employment termination, other than a discharge for cause, voluntary departure, or retirement. *See* 29 U.S.C. § 2101(a)(2), (6). This is a two part inquiry. First, plaintiffs must show that there are at least 50 employees, exclusive of part-time employees. A part-time employee is an employee who is employed for an average of fewer than 20 hours a week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required. *See* 29 U.S.C. § 2101(a)(8). Second, plaintiff must demonstrate that these 50 employees suffered an employment termination, other than discharge for cause, voluntary departure, or retirement. *See* 29 U.S.C. § 2101(a)(6).[6]

Defendant's argument is two-fold. First, plaintiffs cannot show there were 50 employees, exclusive of part-time employees. Second, plaintiffs cannot show that 50 employees were terminated for reasons other than discharge for cause, voluntary termination or retirement.

■ Plaintiffs present two arguments in support of their position. First, plaintiffs claim that defendant did not deny in its Answer that a plant closing occurred, and therefore it is an admitted fact under Federal Rule of Civil Procedure 8(d).[7] Paragraph 17 of plaintiffs' Complaint stated: "TeleSpectrum's operations at the Site were permanently shut down on July 22, 1997 and the employment of the named plaintiffs and the members of the class with TeleSpectrum was thereby terminated. The said shut down of the operations at the Site was a 'plant closing' and/or 'mass layoff' within the meaning of 29 U.S.C. 2101(a)(2) and (3)." (D.I. 5 at ¶ 17). Defendant answered as follows: "It is ad-

mitted that Defendant's operations at its Wilmington facility were permanently ceased on July 22, 1997. It is admitted further the named Plaintiffs thereupon voluntarily terminated their employment with Defendant by declining transfer opportunities to other of Defendant's facilities. The second sentence in paragraph 17 purports to state a conclusion of law to which no answer is required. The remaining allegations of paragraph 17 are denied." (D.I. 6 at ¶ 17). In accordance with the Federal Rules of Civil Procedure, "[a]s long as the answer gives reasonable notice of those allegations sought to be put in issue, the pleading will be effective as a denial." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d,* § 1261 (1990). Clearly, defendant's Answer did not concede that a plant closing occurred. Defendant admitted to limited facts of paragraph 17, while at the same time denying the remaining factual allegations and not admitting to plaintiffs' legal conclusions. This answer was enough to put plaintiffs on notice that whether a plant closing occurred was an issue of contention. Therefore, plaintiffs' argument on this point fails.

■ Plaintiffs also maintain that the definition of plant closing is satisfied because there were 103 affected employees, exclusive of part-time employees. In support of this allegation, the plaintiffs supplied the Court with a summary of the contents of the Questionnaires filed by the class members. In this summary, plaintiffs demonstrate that 103 employees averaged more than 20 hours a week. Therefore, plaintiffs argue that they fall outside the definition of part-time employee. To counter this, defendant has presented evidence that 56 of these employees were not

---

6. Terminate is used in its ordinary meaning: "To discontinue the employment of." *Moore v. Warehouse Club, Inc.,* 992 F.2d 27, 29 (3d Cir.1993) (citing *The American Heritage Dictionary,* 2nd Edition 1254 (1982)).

7. "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." Fed. R.Civ.P. 8(d) (1999).

employed for 6 of the 12 months preceding the date on which WARN Act notice was required.[8] Therefore, these employees would be considered part-time employees. Furthermore, defendant claims that plaintiff has offered no proof as to whether the employees were terminated as a result of the shutdown, as opposed to discharge for cause, voluntary departure or retirement.[9] Plaintiffs clearly have not presented enough evidence to prove as a matter of law that a plant closing occurred. Therefore, the Court will not award summary judgment in their favor on this issue. They have, however, presented enough evidence to defeat defendant's summary judgment motion on this issue. There is a genuine issue of material fact as to whether a plant closing occurred; that is, whether 50 employees, exclusive of part-time employees, suffered an employment loss. Both sides have presented sufficient evidence to withstand each other's summary judgment motion, but not enough evidence to warrant granting their own motion. Given the lack of conclusive evidence, summary judgment would not be appropriate. *See Butler v. Giant Markets, Inc.,* 960 F.Supp. 884, 891 (M.D.Pa.1997) (no summary judgment where evidence conflicts as to whether employee had reasonable expectation that he would be recalled to work).

## C. Affirmative Defense

■ The plaintiffs have proffered enough evidence of their prima facie case to proceed to trial. Consequently, plaintiffs contend that defendant has not met the requirements of the offer to transfer exclusion, and therefore, plaintiffs are entitled to summary judgment. Defendant maintains that it has met the offer to transfer exclusion, and therefore, defen-

dant is entitled to summary judgment. There are two elements to this affirmative defense: (1) the layoff is a result of a relocation or consolidation of part or all of the employer's business; and (2) the employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6–month break in employment; or the employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6–month break in employment, and the employee accepts within 30 days of the offer or the closing or layoff, whichever is later. *See* 29 U.S.C. § 2101(b)(2). At issue is (1) whether the layoff was a result of a relocation or consolidation; (2) whether an offer to transfer was made; and (3) whether it was within a reasonable commuting distance. Defendant has the burden of proof on all three issues.

### 1. Relocation and Consolidation

The first prong of the offer to transfer exclusion is that the closing or layoff must be the result of a relocation or consolidation of all or part of the employer's business. 29 U.S.C. § 2101(b)(2). A relocation or consolidation "means that some definable business, whether customer orders, product lines, or operations, is transferred to a different site of employment and that transfer results in a plant closing or mass layoff." 20 C.F.R. § 639.3(f)(4). Plaintiffs contend that the shutdown was not the result of a relocation or consolidation, but rather the consolidation of business was the result of the closure, and that the closure was motivated by purely economic factors.

---

8. TeleSpectrum closed the Wilmington facility on July 22, 1997. Therefore, if a WARN Act event occurred, defendant would have had to give notice on May 23, 1997, 60 days before the shutdown. Accordingly, for an employee to have worked for 6 months prior to this date, he must have been hired by November 23, 1996.

9. If an employee is terminated for cause, voluntary departure or retirement, he has not suffered an employment loss under the WARN Act. 29 U.S.C. § 2101(a)(6).

Plaintiffs rely solely on *Saxion v. Titan–C–Manufacturing, Inc.*, 86 F.3d 553 (6th Cir.1996). In *Saxion*, the Court of Appeals for the Sixth Circuit held that "under the plain language of § 2101(b)(2), as we read it, the section can only apply where the closure is the result of the [relocation or consolidation], not the other way around." *Id.* at 558. Titan closed its plant because it lost a customer that accounted for 90% of its business. It relocated the remaining 10% of its business to a different plant. *Id.* Therefore, Titan closed its plant, not because of relocation or consolidation, but rather because of the loss of its biggest customer. The relocation was the result of the closure. "The statute … speaks in terms of a plant being closed as 'the result' of a relocation of business. The statute does not provide an exemption where the plant is closed for other reasons." *Id.* .

 This Court agrees with the Sixth Circuit that in order to fall within the offer to transfer exclusion, the defendant must close the plant as a result of a relocation or consolidation of business. The plaintiffs suggest that because the defendant closed the plant for purely economic reasons, the closure was not the result of a relocation of business. The Court, however, cannot agree with that proposition. A relocation or consolidation of business is more often than not driven by the economic concerns of the employer. Therefore, the mere fact that the relocation was for purely economic reasons does not take the defendant out of the offer to transfer exception.

There is, however, a genuine issue of material fact as to whether the closure was a result of a relocation or consolidation, or whether the closure was a result of other factors. Defendant stated in its Answer to the Complaint that it "informed the employees that the Wilmington facility was being closed because of a lack of business." (D.I. 6 at ¶ 15). Furthermore, defendant made the decision to close the Wilmington site at least two months before the formal announcement. This evidence indicates that the closure was not the result of a consolidation, but rather because of a lack of business. According to plaintiffs' theory, defendant closed the site because of a lack of business, and the consolidation was a result of the closure. This would be analogous to the *Saxion* case. Defendant, on the other hand, proffered evidence that it closed the Wilmington facility because of a consolidation of operations in the Mid–Atlantic region. Defendant's evidence showed that the Wilmington site was outdated, and the defendant was consolidating in order to optimize the call centers' efficiency. Furthermore, defendant relied on business forecasts for the region in deciding to consolidate its business. Therefore, a genuine issue of material fact exists as to whether defendant closed the Wilmington site as a result of a relocation or consolidation.

## 2. Offer to Transfer

 The second element of the offer to transfer exclusion is that defendant must offer to transfer the employee. Plaintiffs contend that the offer made to the employees was ambiguous and was not an offer within the meaning of the statute. Defendant maintains that the Act imposes no specifications on the offer to transfer, except that the offer of transfer cannot constitute a constructive discharge. *See* 20 C.F.R. § 639.5(b)(2) ("An offer to a different site of employment should not be deemed to be a 'transfer' if the new job constitutes a constructive discharge."). The alleged offer to transfer stated: "TeleSpectrum Worldwide Inc. has decided to consolidate its operations in the Mid–Atlantic region. Effective July 22, 1997, the Delaware facility will be closed. Managers and Associates will have the opportunity to move to other facilities in Pennsylvania and Maryland. TeleSpectrum has made an investment in you, and we want you to remain with the company if you so desire." (D.I. 45 at A–53). Plaintiffs maintain that this was not a bona fide offer. Defendant

maintains that there is no requirements for the form or content of an offer of transfer.

 Again, the issue of whether there are any requirements for the form and content of the offer of transfer is an issue of first impression. The Federal Regulations are silent, and case law has shed little light on the matter. Consequently, the Court holds that the offer to transfer must be a bona fide offer, and the employees must be guaranteed further employment, in order for defendant to meet the offer of transfer exclusion. In *Kalwaytis v. Preferred Meal Sys., Inc.*, 78 F.3d 117 (3d Cir.1996), the Court of Appeals for the Third Circuit held that a plant closing notice that was ambiguous about the employees future prospects did not serve as proper notice of a plant closing. The second notice clarified the issue of guaranteed employment, and this resolved the ambiguity. While *Kalwaytis* dealt with a plant closing notice, and here we are dealing with an offer to transfer, the principles are the same. If the offer of transfer is ambiguous, or not a bona fide offer, it cannot satisfy the WARN Act as an offer of transfer. The WARN Act is designed to protect workers in order to give them notice of an impending layoff. Requiring the offer of transfer to be a bona fide offer furthers this purpose. If an employer could take advantage of the offer to transfer exception by making an ambiguous, non-guaranteed offer of transfer, the workers' rights are not protected. They would be uncertain about their future, and not protected by the WARN Act notice provisions. Therefore, it is within the purpose of the statute to require an offer to transfer to be a bona fide offer. *See also, Carpenters District Council of New Orleans v. Dillard Department Stores, Inc.*, 790 F.Supp. 663, 670–71 (E.D.La.1992) (employee who did not receive bona fide offer of a job is an affected employee entitled to WARN damages), *aff'd in part, rev'd in part on other grounds*, 15 F.3d 1275 (5th Cir.1994).

The evidence as to whether the offer was bona fide is in conflict. The plaintiffs present the testimony of Russell Sylvester, an employee of TeleSpectrum. Mr. Sylvester testified that there were no job openings in either Philadelphia or King of Prussia, and it would have been impossible for those sites to accommodate the Wilmington employees. (D.I. 45 at 78–83). If the fact-finder were to determine that this is true, and that it would have been impossible for defendant to accommodate the employees, then the offer to transfer was not bona fide. Defendant, on the other hand, maintains that TeleSpectrum corporate management assured Mr. Sylvester that every Wilmington employee would be offered a position. (D.I. 49 at B23). Other TeleSpectrum employees testified that Wilmington employees who wanted to transfer were told that they would be guaranteed a job at another facility. (*Id.* at B20). Therefore, a genuine issue of material fact exists as to whether the offer to transfer was bona fide; that is whether the Wilmington employees were guaranteed further employment.

### 3. Reasonable Commuting Distance

 The third element of the offer to transfer exception is that the offer to transfer must be to a site within a reasonable commuting distance. "The meaning of the term 'reasonable commuting distance' will vary with local and industry conditions. In determining what is a 'reasonable commuting distance', consideration should be given to the following factors: geographic accessibility of the place of work, the quality of the roads, customarily available transportation, and the usual travel time." 20 C.F.R. § 639.5(b)(3). The determination of whether commuting distance is reasonable is an issue of fact. Therefore it is an inappropriate issue for summary judgment. Defendant submitted evidence of the travel times from Wilmington to the new sites · of employment. Plaintiff maintains that the proper measure of a reasonable commute is from the

homes of the employees, many of whom do not live in Wilmington. The Court holds that when ascertaining the reasonable commuting distance, the relevant commute is from the employee's house to the new employment site. The commute from Wilmington to King of Prussia is irrelevant to the employees who do not live in Wilmington. Therefore, there is a genuine issue of material fact as to whether the offer to transfer was within a reasonable commuting distance.

## VI. DAMAGES

■ Damages under the WARN Act are set forth in 29 U.S.C. § 2104(a)(1): "Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such layoff for (A) back pay for each day of violation at a rate of compensation not less than the higher of—(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee . . . ."

Plaintiffs have moved to bifurcate the proceedings concerning the computation of damages from the proceedings concerning the determination of liability. Defendant does not oppose that motion. The parties have also agreed to a method for determining the regular rate of pay per day of class members. As set out by the plaintiffs, "[A] 'daily rate' could be calculated by taking each employees actual earnings for the year 1997 and then dividing that number by 202 days, which is the number of days from January 1, 1997 through July 22, 1997, when the Wilmington Site was shut down." (D.I. 44 at 19–20).

The plaintiffs maintain that this daily rate should then by multiplied by 46 days, the number of calendar days in the violation period. The defendant alleges that the daily rate should be multiplied by the number of working days in the violation period. The Court of Appeals for the Third Circuit has clearly held that the proper measure of damages under the WARN Act is calendar days. *See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 (3d Cir.1998); *United Steelworkers of America v. North Star Steel Co.*, 5 F.3d 39, 42 (3d Cir.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). Every other circuit to consider this issue has rejected *North Star*, and held that working days is the proper measure of damages. *See Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1185 (9th Cir.1998); *Breedlove v. Earthgrains Baking Cos.*, 140 F.3d 797, 801 (8th Cir.1998); *Saxion*, 86 F.3d at 561; *Frymire v. Ampex Corp.*, 61 F.3d 757, 771 (10th Cir.1995); *Carpenters District Council*, 15 F.3d at 1286. However, the Court is bound by the law of this circuit. Therefore, at the damages phase of the trial, calendar days will be the measure of damages, unless the Court of Appeals reverses *North Star* in the interim.[10]

## VII. CONCLUSION

Because genuine issues of material fact exist, both parties' motions for summary judgment are denied. Plaintiffs' Motion to Bifurcate Proceedings is granted.

■

---

**10.** If the Court of Appeals reversed *North Star* and determined that working days are the proper measure of damages, then it would be proper to alter the stipulated formula for daily rate of pay. Instead of dividing the actual earnings for 1997 by 202 (the number of calendar days from January 1, 1997 through July 22, 1997), the earnings would be divided by the number of working days in that period.