**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TODD COLLINS, et al.,
     *Plaintiffs-Appellants,*

v.

GEE WEST SEATTLE LLC,
     *Defendant-Appellee.*

No. 09-36110

D.C. No.
2:08-cv-00238-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
July 15, 2010—Seattle, Washington

Filed January 21, 2011

Before: Pamela Ann Rymer and N. Randy Smith,
Circuit Judges, and Richard F. Cebull,
Chief District Judge.*

Opinion by Judge N.R. Smith;
Concurrence by Judge Rymer;
Dissent by Judge Cebull

---

*The Honorable Richard F. Cebull, United States District Judge for the District of Montana, sitting by designation.

**COUNSEL**

Michael C. Subit (argued), Frank, Freed, Subit & Thomas, LLP, Seattle, Washington, for plaintiffs-appellants Todd Collins, et al.

Richard P. Lentini (argued), Ryan, Swanson & Cleveland, PLLC, Seattle, Washington, for defendant-appellee Gee West Seattle, LLC.

**OPINION**

N.R. SMITH, Circuit Judge:

In this case of first impression, we must determine the meaning of the term "voluntary departure" under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq*. We hold that, if an employee leaves a job because the business is closing, that employee has not

"voluntarily departed" within the meaning of the WARN Act. Rather, that employee has suffered an "employment loss." We reverse and remand.

## I.  Background

In January of 2007, Gee West Seattle LLC ("Gee West") purchased and began operating several automobile franchises in Seattle, Washington. Due to a number of financial losses, however, Gee West commenced efforts to sell the business in July of 2007.

On September 26, 2007, Gee West informed its employees, Plaintiffs-Appellants (hereinafter referred to as "Employees"), via written memo that although it was "actively pursuing" the sale of the business it would "be closing its doors at the end of business on Sunday October 7, 2007." In the event a buyer was not found before October 7, 2007, Gee West would terminate all employees except designated Accounting and Business Office employees. Employees were further notified that "[n]otice could not be given sooner because Gee West was actively seeking business to keep the business running," as well as "seeking potential purchasers, and attempting to sell inventory, and [it was] concerned that potential purchasers would not have made a purchase, had [its] workforce been seeking alternate employment."

Prior to the September 26, 2007 announcement, Gee West had employed approximately 150 employees. Following the September 26, 2007, announcement, however, employees began to stop reporting to work. By October 5, 2007, only 30 employees reported at the various Gee West facilities.

Gee West ceased business on October 5, 2007, rather than October 7, 2007, because too few employees remained to maintain operations. Gee West reopened on October 6, 2007, for inspection by a potential purchaser, but the sale did not go through and the business was permanently closed. Documents

created after the filing of this case by Saundra Godin, Gee West's Human Resources Director, show that every employee (who was terminated after September 26, 2007) left because the "business closed."

## A.   The WARN Act

The WARN Act requires that: "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order (1) . . . to each affected employee." 29 U.S.C. § 2102(a). An "affected employee" is one who "may reasonably be expected to experience an employment loss as a consequence of a plant closing . . ." 29 U.S.C. § 2101(a)(5). The 60-days' notice requirement, however, applies only "if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees . . . ." 29 U.S.C. § 2101(a)(2). "[T]he term 'employment loss' means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement . . . ." 29 U.S.C. § 2101(a)(6).

## B.   District Court Proceedings

Employees filed this lawsuit in the Western District of Washington on February 12, 2008, claiming Gee West violated the WARN Act by not giving 60-days' notice before closing its doors. Both parties filed motions for summary judgment. On November 10, 2009, the district court granted Gee West's motion for summary judgment.

The court concluded that the roughly 120 employees, who left between September 26, 2007, and the final closure on October 5, 2007, did not suffer an "employment loss" because they "voluntarily departed" within the meaning of the WARN Act. The court reasoned that, since "voluntary" means "done or undertaken of one's own free will," the "pre-closure departure of the 120 employees . . . is not any less 'voluntary' for

having possibly been motivated by the belief that they would be unemployed in the near future." Accordingly, the district court held that "an employee who leaves of their own free will prior to the closure of a business (absent allegations of constructive discharge) 'voluntarily departed' for purposes of the WARN Act and has not suffered an 'employment loss' as defined by that statute."[1]

Employees also asserted an "equitable estoppel" theory, arguing that Gee West should not be allowed to benefit from its own wrongdoing. The district court rejected the argument, concluding that no wrongdoing had occurred.

Having ruled that the Employees, who left Gee West between September 26 and October 5, 2007, had "voluntarily departed," the district court concluded that there was no cognizable WARN Act claim. Because fewer than 50 employees suffered an "employment loss" as a result of the business closure, no notice needed to be given. Employees now appeal.

## II. Standard of Review

The court reviews *de novo* a district court's decision to grant summary judgment. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003).

This case turns on an interpretation of the WARN Act. "We apply a de novo standard of review to . . . questions of statu-

---

[1]In addition, the district court also characterized the September 26, 2007 notice as a "notice of potential sale" rather than a "notice of closure" and found that the uncertainty of the closure undercut Employees' claim that they were "forced" to leave in order to find new jobs.

tory interpretation." *J&G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1047 (9th Cir. 2007).

### III.   Discussion

On appeal, Employees argue both that: (1) the district court erred by interpreting the term "voluntary departure" to include an employee's departure from a job because the business was closing; and (2) the doctrine of "equitable estoppel" prevents Gee West from claiming that its employees "voluntarily departed" from their jobs. We agree on the first issue and reverse and remand. In light of that holding, Employees' second argument is moot. We therefore decline to address it in this appeal.

Employees Departing a Job Because the Business is Closing Have Not "Voluntarily Departed" Within the Meaning of the WARN Act

" 'The starting point for our interpretation of a statute is always its plain language.' " *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (citation omitted). However, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish." *Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir. 2001) (internal quotations omitted). Thus, we may not read a statute's plain language to "produce a result contrary to the statute's purpose or lead to unreasonable results." *United States v. Combs,* 379 F.3d 564, 569 (9th Cir. 2004). Nor may we interpret "any statutory provision in a manner that would render another provision superfluous." *Bilski v. Kappos*, 130 S. Ct. 3219, 3222 (2010).

**[1]** We begin our analysis with the statute's plain language. Under the Act, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to

each affected employee." 29 U.S.C. § 2102(a). An "affected employee" is one who "*may reasonably be expected to experience* an employment loss as a consequence of a plant closing . . . ." 29 U.S.C. § 2101(a)(5) (emphasis added). It is undisputed that Gee West is an "employer" and that Employees are "affected employees" under the Act. Therefore, unless a statutory exception applied, Gee West was required to give written notice 60 days before shutting down its plant to every employee that "reasonably expected" to be terminated—i.e., all 150 employees still working with Gee West 60 days before the plant closure. Having failed to do so, Gee West committed a facial violation of the WARN Act.

**[2]** However, Gee West argues that notice is not required, focusing entirely on the statutory term "employment loss." "[T]he term 'employment loss' means (A) an employment termination, other than a discharge for cause, *voluntary departure*, or retirement . . . ." 29 U.S.C. § 2101(a)(6) (emphasis added). Seizing upon the dictionary definition of the term "voluntary,"[2] Gee West argues that, because all but 30 employees left their jobs of their own free will prior to October 7, 2007, Gee West's closing did not qualify as a "plant closing" under the WARN Act. This argument, however, flips the basic structure of the WARN Act on its head. Instead of placing the onus on the employer to give 60-days' notice before closing a plant, Gee West's reading of the Act would measure an employer's liability based solely on the number of employees remaining at the plant at the time of its closure, even though employees departed because of the plant closure. Such an interpretation is inconsistent with the basic structure of the WARN Act and frustrates its purposes. We reject Gee West's argument.

**[3]** "Employment loss" is relevant to two distinct issues under the WARN Act. First, it defines those affected employ-

---

[2]"Voluntary" is defined as "performed, made, or given of one's own free will." Webster's Third New International Dictionary 2564 (1993).

ees to whom 60-days' notice must be given under 29 U.S.C. § 2102(a). "Affected employees" are all those who "may *reasonably be expected* to experience an employment loss *as a consequence of a plant closing*." 29 U.S.C. § 2101(a)(5) (emphasis added). Therefore, the affected employees must be determined prospectively in order for the employer to give proper notice.[3]

**[4]** Second, a plant closing occurs "if the shutdown results in an employment loss at the single site . . . for 50 or more employees." 29 U.S.C. § 2101(a)(2). In this case, the relevant inquiry is not the expected employment loss, but the actual employment loss. However, as the Department of Labor noted, because employers must determine at least 60 days in advance whether notice must be given, employers must accurately determine how many employees will lose employment. *See* Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042-01, 16047 (April 20, 1989) ("an employer faced with a decision about whether to give notice may be well advised to base its decision on the number of positions to be eliminated, which is a known fact at the relevant time.").

As the DOL suggests, the starting point for determining whether there is an actual or reasonably expected employment loss (as a consequence of a plant closing) is to determine how many positions will be eliminated by the closing. In the case of Gee West, this would be all 150 employees, except for selected Accounting and Business Office staff. The Act, however, also excludes those who retire, are discharged for cause, or voluntarily depart from the definition of those experiencing employment loss. 29 U.S.C. § 2101(a)(6). Thus, those whom

---

[3]On this note, we question the relevance of the district court's characterization of Gee West's notice as a "notice of potential sale." Whether it was a "notice of potential sale" or "potential closure," the notice stated that Gee West would "be closing its doors at the end of business on Sunday, October 7, 2007." Such a notice would certainly create a reasonable expectation of employment loss among Gee West's current employees.

the employer reasonably expects to retire, to discharge for cause, or to voluntarily depart before the closure are not affected employees under the Act, as they cannot "reasonably be expected to experience an employment loss." Gee West does not dispute that Employees are affected employees and thus reasonably expected to experience an employment loss.

[5] Similarly, those employees who actually retire, are discharged, or leave for reasons unrelated to the shutdown do not count as "employment loss" when determining that there has been a plant closing. However, unless there is some evidence of imminent departure for reasons other than the shutdown, it is unreasonable to conclude that employees voluntarily departed after receiving notice of the upcoming closure. For example, Gee West argues that 150 affected employees reasonably expected loss of employment, and those employees' positions were eliminated, but that only 30 employees actually experienced employment loss. Gee West claims that all other employees voluntarily departed after notice was given. This argument would allow an employer to escape responsibility for failing to give proper notice simply because its employees subsequently leave the business due to its imminent closure. The unexpected and urgent need to find new employment is precisely the type of pressure that this Court held that Congress was attempting to eliminate by creating the WARN Act. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1158 (9th Cir. 2001) and discussion *infra*. Employees' departure because of a business closing, therefore, is generally not voluntary,[4] but a consequence of the shutdown and must be

---

[4]Not all departures after a deficient notice will be considered an "employment loss" under the Act. Employees could certainly still "voluntarily depart" from a job even after a deficient notice. For example, an employee might depart because of pregnancy, health reasons, a better job opportunity, etc. We only hold that, where an employee's reason for departing is because the business is closing, such a departure cannot be termed "voluntary" under the Act. Determining an employee's reason for departing is a factual inquiry better suited for district courts.

considered a loss of employment when determining whether a plant closure has occurred. Gee West's argument that only 30 employees lost employment as a consequence of the plant closing is thus not credible. Indeed, Gee West's records note that all employees who were terminated after Sept. 26, 2007, left as a consequence of the business closing.

This is consistent with the language of the statute which stresses the connection between the loss of employment and the plant closing. *See* 29 U.S.C. § 2101(a)(5) ("employment loss *as a consequence* of a proposed plant closing"). It also comports with Congress's intent that advance notice be voluntarily given even if the employer is not required to comply with the statute, 29 U.S.C. § 2106, and with Congress's desire that employers not attempt to resort to slight of hand to "evade the requirements of this chapter" in calculating employment loss. 29 U.S.C. § 2102(d).

An examination of the basic purposes of the WARN Act further confirms this understanding. We have previously clarified that the WARN Act "is a wage workers' equivalent of business interruption insurance. It protects a worker from being told on payday that the plant is closing that afternoon and his stream of income is shut off, though he has to buy groceries for his family that weekend and make a mortgage payment the next week." *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1184 (9th Cir. 1998). Therefore, "it makes perfect sense to require the company to pay the worker for 60 work days," in order for the worker's "stream of income [to] continue[ ] to flow for 60 days after he knows the plant will shut down, so he has two months to look for a new job, perhaps in a new town if the plant shutdown decimated employment in his town." *Id.*[5] And while the Act is primarily

---

[5]20 C.F.R. § 639.1 confirms this understanding of the WARN Act's purposes: "Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."

"remedial," *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1159 (9th Cir. 2001), it is not "purely remedial," *id.* at 1158 (quotation marks and citation omitted). Thus, while Congress meant for the Act to "compensate for actual lost earnings" resulting from an Employer's violation of the Act, Congress also intended to give terminated employees time to readjust without immediately searching for a new job or being pressured "to mitigate damages by taking any job offered." *Id.* (*quoting Carpenters Dist. Council of New Orleans v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1284 n.14 (5th Cir. 1994)).

Gee West disputes our understanding of the purpose of the WARN Act. It argues: "The employees' reasons for abandoning their jobs are immaterial. Some may have left Gee West early because they found alternative employment. The WARN Act was certainly not intended to provide [Employees] with double income, and that is why the Act excludes voluntary departures from its coverage." We have expressly refuted such an interpretation of the WARN Act. In *Las Vegas Sands*, we held that damages under the WARN Act are not offset by wages earned by another employer during the statutory time period. 244 F.3d 1152, 1158. Removing from the Act's protection those employees that, as a result of deficient notice, had to quit early to find a job (the very thing the Act presumes they will do) is entirely inconsistent with the Act's goals.

[6] Employers, such as Gee West, who are trying to keep a business afloat and whose futures are uncertain have other protections under the Act, and need not resort to a broad definition of voluntary departure to avoid liability. Struggling businesses face difficult issues such as whether to give notice at all, since closure is not certain, and whether giving notice will hasten the business decline or impair efforts for a sale. Recognizing these difficulties and the public policy interest in giving employees such notice as is practicable, Congress provided that an employer who is actively seeking capital or

business in order to avoid or postpone a shutdown may give only such notice "as is practicable" if giving 60-days' notice would "preclude[ ] the employer from obtaining the needed capital or business. 29 U.S.C. §§ 2102(b)(1) & (3). This provision of the WARN Act, otherwise known as the "faltering business" exception, explicitly provides for the situation confronted by Gee West without resort to a broad interpretation of voluntary departure.[6]

Adopting Gee West's interpretation of "voluntary departure" would eviscerate much of the relevance and purpose behind §§ 2102(b)(1) & (3). Instead of relying on §§ 2102(b)(1) & (3) to escape the strictness of the 60-day's notice requirement, faltering businesses could, in many cases, simply rely on a liberal definition of the term "voluntary departure" to avoid the Act's reach.[7] Such a tactic is unnecessary under the Act and contrary to the language and purpose of the Act as discussed *supra*.

[7] In sum, we hold that an employee departing a business because that business was closing, has not "voluntarily departed" within the meaning of the Act. To hold otherwise

---

[6]It is important to note that our decision today does not preclude Gee West from invoking §§ 2102(b)(1) & (3) as an affirmative defense on remand; we merely hold that the district court's interpretation of the term "voluntary departure" was erroneous. We say nothing about any other defenses or arguments that Gee West may raise below. It is for the district court to consider the propriety of such arguments in the first instance.

[7]Of course, in those instances where, even accounting for all employees that departed because the business was closing, there are still 50 or more employees at the plant at the time of its closing, the 60-days' notice requirement would still apply. In such instances, therefore, reliance on a liberal definition of "voluntary departure" would not aid a business that had failed to give the requisite 60-days' notice, making resort to §§ 2102(b)(1) & (3) the business's best option. Notwithstanding such circumstances, Gee West's proffered interpretation of "voluntary departure" still renders §§ 2102(b)(1) & (3) largely superfluous, as struggling businesses would have no reason to resort to it in cases such as the one presented us today.

would be inconsistent with the Act's general structure and its overall purpose. It would also render the "faltering business" exception superfluous. We decline to adopt this holding. Further, because there was at least some evidence in the record that Employees left their jobs because the business was closing,[8] summary judgment is inappropriate. We reverse and remand.[9]

## IV.  Conclusion

The district court interpreted the term "voluntary departure" to include situations where employees leave a company because it is closing. Such an interpretation contradicts both the general structure and purpose of the WARN Act. It also renders the "faltering business" exception superfluous. We decline to adopt the district court's interpretation and hold instead that, where an employee has left a business because the business is closing, that employee has not "voluntarily departed" within the meaning of the WARN Act. We therefore reverse and remand for the district court to reconsider the summary judgment motion in light of this opinion.

**REVERSED and REMANDED.**

---

RYMER, Circuit Judge, concurring:

I agree that Gee West violated the WARN Act by failing to give 60 days notice of its closure. 29 U.S.C. § 2102(a). More than 50 employees suffered an "employment loss" dur-

---

[8]Documents created after the filing of this case by Saundra Godin, Gee West's Human Resources Director, show that every employee (who was terminated after September 26, 2007) left because the "business closed." Gee West did not cross-appeal the denial of its motion to strike this testimony and has therefore waived any objection to the testimony.

[9]Because we reverse the district court's interpretation of the term "voluntary departure," we have no reason to discuss Employees' argument that they were "constructively discharged."

ing a thirty-day period as a consequence of Gee West's closing, that is, they did not retire, they did not voluntarily depart, and they weren't discharged for cause. 29 U.S.C. §§ 2101(a)(2), (6). There is no serious dispute that these employees could reasonably be expected to experience such a loss were the dealership to close its doors. 29 U.S.C. § 2101(a)(5). Nor is there a question in this case that any affected employee retired or was fired. This leaves as the only issue whether their employment was terminated on account of a "voluntary departure." The concept is not defined, but we needn't worry about the parameters in this case[1] given that records Gee West prepared show that the reason its employees left was "business closed." No written notice of closing was given 60 days before the shutdown occurred. This being so, it doesn't matter whether the notice that was given, on September 26, 2007, would have sufficed or not. Neither did Gee West offer to continue paying its employees for 60 days. Thus, the bottom line is that Gee West is liable unless it establishes a defense. Accordingly, I concur in the judgment reversing and remanding.

---

CEBULL, Chief U.S. District Judge, dissenting:

The majority opinion establishes a new bright-line rule that workers who abandon their jobs because the business is closing have not "voluntarily departed" within the meaning of the WARN Act. For the following reasons, I respectfully dissent from the opinion of Judge Smith and the concurrence of Judge Rymer.

If Congress intended that every employee who leaves a job upon notice that the business is closing has "voluntarily departed," then the WARN Act would say so. In fact, the

---

[1] Including the applicability, if any, of the doctrine of constructive discharge.

DOL commentary on the passage of the WARN Act makes clear that a worker who decides to leave early after the announcement of a business closing has not necessarily been constructively discharged or quit involuntarily. 54 Fed.Reg. 16042, 16048 (April 20, 1989). The majority opinion now establishes the opposite as a matter of law.

In my view, the WARN Act's recognition of constructive discharge, 20 C.F.R. § 639.3(f)(2), and the fact that constructive discharge can be established where the decision to resign was involuntary under circumstances not involving intolerable or discriminatory working conditions, *see Knappenberger v. City of Phoenix,* 566 F.3d 936, 940 (9th Cir. 2009), protects parties similarly situated to the Employees. But as recognized by the district court, Employees neither argued nor presented a single declaration or deposition establishing that any Employee was constructively discharged. As the proponent of a WARN Act claim, Employees had the burden of proof to establish that fifty or more full-time employees at a single site of employment suffered an employment loss. *Johnson v. Telespectrum Worldwide, Inc.*, 61 F.Supp.2d 116, 121 (D. Del. 1999). Since an employee who voluntarily departs does not suffer an employment loss, 29 U.S.C. § 2101(a)(6), part of Employees' burden was to establish they did not depart voluntarily.

The majority seizes upon interrogatory responses compiled a year after the fact by Saundra Godin, Gee West Seattle's Human Resources Director, simply stating that the Employees who left after the announcement left their jobs because the "Business Closed." Considering Godin's testimony that many Employees simply walked off the job and that she was unable to determine when most Employees left, this evidence is speculative.

Accordingly, since I believe the district court correctly held that Employees' WARN Act claim failed for lack of proof and see no need to create new law, I respectfully dissent.