**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANNY P.; ANGELA P.; NICOLE B.,

*Plaintiffs-Appellants*,

v.

CATHOLIC HEALTH INITIATIVES,
*Defendant-Appellee.*

No. 16-35609

D.C. No.
3:15-cv-05024-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Submitted April 10, 2018[*]
San Francisco, California

Filed June 6, 2018

Before: Sidney R. Thomas, Chief Judge, Ferdinand F.
Fernandez, Circuit Judge, and David A. Ezra,[**] District
Judge.

Opinion by Judge Fernandez

---

[*] The panel unanimously finds this case suitable for decision without
oral argument.  Fed. R. App. P. 34(a)(2).

[**] The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

## SUMMARY[***]

### Parity Act

The panel reversed the district court's grant of summary judgment in favor of the defendant in an action challenging an ERISA plan's denial of a claim for the cost of an inpatient stay at a residential mental health treatment facility.

The panel held that the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act required that the plan's coverage for stays at licensed inpatient residential treatment facilities had to be no more restrictive than stays at skilled nursing facilities. Thus, the Parity Act precluded the plan from deciding that it would provide room and board reimbursement at licensed skilled nursing facilities for medical and surgical patients, but not at residential treatment facilities for mental health patients. The panel remanded the case to the district court.

### COUNSEL

Brian S. King, Brian S. King P.C., Salt Lake City, Utah; John Walker Wood, The Wood Law Firm PLLC, Seattle, Washington; for Plaintiffs-Appellants.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Michael Madden, Bennett Bigelow & Leedom P.S., Seattle, Washington; Stephen E. Fox, Polsinelli PC, Dallas, Texas; Lilian H. Davis, Polsinelli PC, St. Louis, Missouri; for Defendants-Appellees.

---

**OPINION**

FERNANDEZ, Circuit Judge:

Danny P., Angela P. and Nicole B. (hereafter collectively "P") appeal the district court's grant of summary judgment to Catholic Health Initiatives ("CHI") and Catholic Health Initiatives Medical Plan–Blue Cross Blue Shield (collectively "the Plan"). The Plan denied P's claim for the cost of Nicole B.'s inpatient stay in Island View Residential Treatment Center ("Island View"), a residential mental health treatment facility. We reverse and remand.

BACKGROUND

The Plan is a self-funded group health benefit plan covering CHI employees and their dependents. The Plan provides for coverage of "Mental Health Services," which includes coverage for services related to "the diagnosis and/or treatment of an Illness Affecting Mental Health." Illnesses affecting mental health are those disorders identified in the current Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association.

The Plan covers "[b]ed, board, and general nursing care" as well as "[a]ncillary services" provided at skilled nursing facilities. Skilled nursing facilities are those which are "an institution or distinct part of an institution which is primarily

engaged in providing comprehensive skilled services and rehabilitative Inpatient care." It also provides coverage at "Residential Treatment Facilities," which are duly licensed facilities that deal with illnesses affecting mental health.[1]

Nicole B. was covered by the Plan and was admitted to the Island View residential treatment program for the period from July 6, 2011, to June 8, 2012. P sought to have the Plan cover the cost of Nicole B.'s treatment there, including room and board costs. The Plan denied room and board coverage and, after exhausting the Plan's administrative remedies, P brought this action under the Employee Retirement Income Security Act ("ERISA").[2] In due course, the parties filed cross-motions for summary judgment and the district court granted summary judgment in favor of the Plan on June 30, 2016. This appeal followed.

JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo. *See Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011). Summary judgment is only appropriate

---

[1] At the outset, we note that the parties do not dispute the need for residential treatment in this case, nor do they dispute that the facility in question was licensed. Moreover, the Plan essentially concedes that, despite some ambiguity, the Plan does provide some coverage at residential treatment facilities for illnesses affecting mental health.

[2] 29 U.S.C. §§ 1001–1461.

if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review statutory interpretation issues de novo. *Collins*, 631 F.3d at 1004.

## DISCUSSION

P asserts that the district court erred when it determined that the Parity Act[3] did not require that the Plan's coverage for stays at licensed inpatient residential treatment facilities had to be no more restrictive than stays at skilled nursing facilities. We agree.

The Parity Act requires that benefits in a plan that provides for "both [(a)] medical and surgical benefits and [(b)] mental health or substance use disorder benefits," must not impose more restrictions on the latter than it imposes on the former. 29 U.S.C. § 1185a(a)(3)(A). Specifically, the Parity Act states the following:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that–
>
> (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the

---

[3] Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, codified at 29 U.S.C. § 1185a.

predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and

(ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

*Id.* That language is quite clear,[4] in general. Notably, it directs that benefits and treatment limitations for mental health problems shall be "no more restrictive" than those for medical and surgical problems. However, unsurprisingly, it does not specifically address the precise scope of the Parity Act provisions for the myriad of situations that might arise. That leaves room for interpretation. Put otherwise, it has necessarily left some room for uncertainty or ambiguity regarding its application to specific ERISA plan terms and

---

[4] *See Williams v. Taylor*, 529 U.S. 420, 431, 120 S. Ct. 1479, 1487–88, 146 L. Ed. 2d 435 (2000); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997).

situations.[5] Nevertheless, as we read, interpret, and fill any gap in the language of the Parity Act, we are satisfied that it precludes the Plan from deciding, as the Plan does, that it will provide room and board reimbursement at licensed skilled nursing facilities for medical and surgical patients, but will not provide room and board reimbursement at residential treatment facilities for mental health patients.[6]

We note that Congress has conferred upon certain agencies the power to issue rules that give guidance and information regarding the application of the Parity Act;[7] those agencies have now cooperated in the proposal and issuance of rules.[8] In any event, a court will "impose its own construction on the statute . . . in the absence of an

---

[5] *See United States v. Haggar Apparel Co.*, 526 U.S. 380, 392–94, 119 S. Ct. 1392, 1400, 143 L. Ed. 2d 480 (1999); *Fournier v. Sebelius*, 718 F.3d 1110, 1118 (9th Cir. 2013).

[6] We have said that the notion that any necessary inpatient mental health treatment could take place at a skilled nursing facility "lacks support in common sense." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 716 (9th Cir. 2012).

[7] *See* 29 U.S.C. § 1185a(g); *see also* 26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92. Those are the Department of Labor, the Department of Health and Human Services, and the Department of the Treasury. We will hereafter refer to those collectively as "the Departments."

[8] *See* Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan Program, 78 Fed. Reg. 68,240 (Nov. 13, 2013) ("Final Rules"); Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 75 Fed. Reg. 5410 (Feb. 2, 2010) ("Interim Final Rules" or "IFRs").

administrative interpretation." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984) (footnote omitted); *see also Christensen v. Harris County*, 529 U.S. 576, 587–88, 120 S. Ct. 1655, 1663, 146 L. Ed. 2d 621 (2000). We have done that. However, to the extent that the Departments have now interpreted the Parity Act, we will consider their constructions.

We again note that nothing in the regulations definitively answered the question before us for the period of Nicole B.'s stay at the residential treatment facility (2011–2012), but nothing in them was or is contrary to our interpretation. In fact, while the IFRs expressly eschewed fully answering the question,[9] they did indicate that mental and medical/surgical benefits must be congruent, and that limiting the former while not placing a similar limitation on the latter would be improper. As the IFRs declared: "Under these regulations, if a plan provides any benefits for a mental health condition or substance use disorder, benefits must be provided for that condition or disorder in each classification for which any medical/surgical benefits are provided." IFRs at 5413. They further declared:

> If a plan provides benefits for a mental health condition or substance use disorder in one or more classifications but excludes benefits for that condition or disorder in a classification (such as outpatient, in-network) in which it provides medical/surgical benefits, the

---

[9] "These regulations do not address the scope of services issue [regarding residential treatment facilities versus skilled nursing facilities]." IFRs at 5416.

> exclusion of benefits in that classification for a mental health condition or substance use disorder otherwise covered under the plan is a treatment limitation.  It is a limit, at a minimum, on the type of setting or context in which treatment is offered.

*Id.*  Those statements strongly suggested that a plan cannot allow room and board costs at a skilled nursing facility where one is an inpatient, while denying them at a residential treatment facility where one is an inpatient.

Moreover, the Final Rules explicitly state that coverage at residential treatment facilities must, indeed, be like the coverage at skilled nursing facilities.  Final Rules at 68,246–47.  Specifically:

> Although the interim final regulations did not define the scope of the six classifications of benefits, they directed that plans and issuers assign mental health and substance use disorder benefits and medical/surgical benefits to these classifications in a consistent manner.  This general rule also applies to intermediate services provided under the plan or coverage.  Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications.  For example, if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as

> inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.

*Id.*  Plainly there is no antinomy between our reading and the Departments' reading.  In short, the Plan should not have denied Nicole B. coverage on the basis that her stay was at a residential treatment facility.[10]

## CONCLUSION

The district court erred when it decided that during the period from July 6, 2011, to June 8, 2012, the Plan was not required to provide room and board coverage for stays at residential treatment facilities, although it did provide room and board at skilled nursing facilities.  Were it otherwise, the lack of equity that the Parity Act was designed to repress would have become renascent.  Therefore, we reverse the district court's judgment and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[10] The Plan argues that the Parity Act is so vague that application of its provisions to the Plan before the effective date of the Final Rules was a violation of due process.  *See United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).  We disagree with that assessment of any ambiguity in the statute.  Even if statutes lack perfect clarity until a court or agency speaks, that does not render their application unconstitutional. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312, 114 S. Ct. 1510, 1519, 128 L. Ed. 2d 274 (1994); *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 2300, 33 L. Ed. 2d 222 (1972); *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000).