**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUZANNE STONE,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY; U.S. BEHAVIORAL HEALTH PLAN, CALIFORNIA, DBA OptumHealth Behavioral Solutions of California,<br>*Defendants-Appellees.* | No. 19-16227<br><br>D.C. No.<br>3:17-cv-4832-RS<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted September 16, 2020
San Francisco, California

Filed November 9, 2020

Before: J. Clifford Wallace, A. Wallace Tashima, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Employee Retirement Income Security Act

The panel affirmed the district court's grant of summary judgment in favor of the defendants in an ERISA action concerning the denial of health care coverage for out-of-state residential treatment for anorexia nervosa.

The panel held that defendants' denial of coverage did not violate the Mental Health Parity and Addiction Equity Act or the California Mental Health Parity Act because the denial was based solely on the ERISA plan's exclusion of coverage for out-of-state treatment, which applied equally to mental and physical illnesses.

## COUNSEL

Peter S. Sessions (argued) and Lisa S. Kantor, Kantor & Kantor LLP, Northridge, California, for Plaintiff-Appellant.

Raul L. Martinez (argued) and Elise D. Klein, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**OPINION**

TASHIMA, Circuit Judge:

Plaintiff Suzanne Stone had an employer-provided health care plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and administered by Defendant U.S. Behavioral Health Plan, California, dba OptumHealth Behavioral Solutions of California ("Optum"). The Plan excluded coverage for any out-of-state treatment, except for emergency or urgently needed services. Plaintiff, aware of this exclusion, sent her daughter to an out-of-state residential treatment program for anorexia nervosa. After Optum and UnitedHealthcare Insurance Company (together, "Defendants") denied coverage, Plaintiff filed this action pursuant to ERISA. She claims that Defendants' denial of coverage violated the Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"), 29 U.S.C. § 1185a, and the California Mental Health Parity Act ("California Parity Act"), Cal. Health & Safety Code § 1374.72 (amended 2020). The district court granted summary judgment in favor of Defendants.

Both the Federal Parity Act and the California Parity Act require that health plans provide equal coverage for mental illnesses and physical illnesses. Here, the denial of coverage was based solely on the Plan's exclusion of coverage for out-of-state treatment, which applies equally to mental and physical illnesses. We therefore agree with the district court that the denial of coverage did not violate the Parity Acts and affirm the judgment.

**BACKGROUND**

## I.  The Plan

The Plan, a health maintenance organization ("HMO") plan, provides that mental health services are covered when medically necessary, preauthorized by Optum, and provided at a participating facility.  As pertinent here, the Plan excludes coverage for mental health services rendered outside the service area, except for emergency services or urgently needed services.  The service area is defined as "[t]he geographic area in which [Optum] is licensed to arrange for Behavioral Health Services in the State of California by the California Department of Managed Health Care."

The Plan similarly excludes coverage for physical health services rendered outside the service area, except for emergency services or urgently needed services.  As with mental health services, the service area is defined as "[the] geographic region in the State of California where United Healthcare is authorized by the California Department of Managed Health Care to provide Covered Services to Members."

## II.  Factual Background

G.S., Plaintiff's minor daughter, began receiving treatment in June 2014 at an eating disorder program run by the University of California San Diego ("UCSD").  Optum approved the coverage.  UCSD discharged G.S. on July 18, 2014, stating that she "required a higher level of care at an evidence based (family based treatment) residential facility. There are no known FBT residential facilities in California

and she was therefore referred to Eating Recovery Center ["ERC"] in Denver, Colorado."

On July 7, 2014, prior to G.S.'s discharge from UCSD, Plaintiff called Optum to ask about out-of-state residential treatment centers and was told that the Plan did not cover out-of-state treatment other than for an emergency. Plaintiff told the Optum representative that a facility in Colorado offered "the Maudsley program" and that no California facilities offered it. She was advised to check California facilities. She also was advised that she had an HMO plan, which covered mental health services only in her state of residence.

On July 11, 2014, Plaintiff called Optum again, asking if "out-of-state intermediate coverage" was possible and saying that UCSD recommended residential treatment at ERC, a facility in Colorado. She was told that her HMO plan was "limited by state law" to provide care only in California.

On July 16, 2014, Plaintiff called Optum and said she planned to have her daughter attend the residential treatment center in Colorado recommended by UCSD. She again was told that her HMO plan covered treatment only in California. She responded that she was aware of that limitation, but "this specific program is recommended and uses same modality as current facility."

Plaintiff admitted G.S. to ERC on July 21, 2014. On July 23, 2014, Plaintiff called Optum, asking for a referral to a residential treatment center for G.S., even though G.S. already had entered treatment at ERC. Plaintiff was told that Center for Discovery ("CFD") was an in-network residential treatment center in California for adolescent eating disorders.

On July 24, 2014, Optum informed ERC that Plaintiff had a California HMO and that there was no coverage for G.S.'s treatment at ERC. Optum also told ERC that "we would be happy to assist the parents" in finding an in-network, mental health residential treatment center in California.

On July 30, 2014, Optum sent Plaintiff a letter, stating that G.S.'s treatment at ERC was not covered because out-of-state mental health treatment was not covered, except for emergency inpatient admissions. G.S. remained at ERC until her discharge on September 23, 2014.

ERC appealed the denial of payment in October 2014. ERC stated that UCSD had prescribed a residential treatment center using family-based therapy and that G.S. required a nasogastric feeding tube and psychiatric care when she arrived for treatment at ERC. In December 2014, Optum replied to ERC, explaining that coverage was not available under Plaintiff's plan for mental health residential treatment in an out-of-state facility, except for emergency inpatient admissions.

Plaintiff appealed the denial of benefits in January 2015, stating that her research revealed that the only evidence-based treatment for anorexia nervosa in adolescents is the Maudsely approach and that UCSD used this treatment and recommended it for G.S. Plaintiff further wrote that she and her husband visited CFD, the residential treatment center in California covered by the Plan, and decided CFD was not acceptable for several reasons: (1) CFD does not follow the Maudsley method; (2) CFD's units are private residences in residential neighborhoods, but G.S. needed a locked unit; (3) CFD does not have a full-time psychiatrist or medical staff; (4) CFD does not have the ability to administer

nasogastric feeding; and (5) the CFD unit near their home has a swimming pool,  creating a high risk environment.  By contrast, ERC used the Maudsley method, was locked and alarmed, and had a full-time psychiatrist and medical staff.

In March 2017, Optum again explained to Plaintiff that coverage of G.S.'s treatment was not available because services rendered outside the service area are not covered, except for emergency or urgently needed services.  Optum stated that there were appropriate residential mental health services available within the state of California and that G.S.'s treatment at ERC accordingly was not covered.

## III.    Procedural Background

Plaintiff filed her ERISA complaint in August 2017.  The parties cross-moved for summary judgment.  The district court granted Defendants' summary judgment motion and denied Plaintiff's cross-motion.   The court carefully considered the evidence and the parties' arguments and concluded that Plaintiff's actual reason for sending G.S. to ERC was that her "parents really wanted a facility that offered the Maudsley program."  The court reasoned that Plaintiff had not shown that the Plan or the law obliged Optum "to provide benefits of a particular type simply to satisfy the beneficiaries' preferences."  The court concluded that the Parity Acts did not apply because there was no disparity in the Plan between the coverage for mental illness and physical illness.  The district court entered judgment in favor of Defendants.  Plaintiff timely appealed.

## STANDARD OF REVIEW

"[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties agree that de novo review is appropriate because the Plan does not grant the plan administrator discretionary authority.

## DISCUSSION

### I.  Federal Parity Act

The Federal Parity Act requires that "benefits and treatment limitations for mental health problems shall be 'no more restrictive' than those for medical and surgical problems." *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018). The statute provides in part:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that –
>
> (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage) . . . ; and

> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) . . . .

29 U.S.C. § 1185a(a)(3)(A).

Plaintiff has not shown that the Plan's requirement that G.S. receive treatment at a residential treatment facility in California is a more restrictive limitation on treatment than limitations on treatment for medical and surgical issues. *Danny P.*, 891 F.3d at 1158 (stating that Federal Parity Act "directs that benefits and treatment limitations for mental health problems shall be 'no more restrictive' than those for medical and surgical problems"); *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant."). In fact, she does not contend that the Plan's geographic limitation applies unequally to physical and mental health issues. The Federal Parity Act was not violated by Defendants' denial of coverage.

## II. California Parity Act

The California Parity Act similarly was enacted to "combat [the] disparity" between the coverage provided by private health insurance policies for mental illness and that provided for physical illness. *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 710–11 (9th Cir. 2012); *accord Rea v. Blue Shield of Cal.*, 172 Cal. Rptr. 3d 823, 836 (Ct. App. 2014) ("[T]he stated intent of the [California] Parity Act is simple:

to address the imbalance in coverage between mental illnesses and physical illnesses.").

The California Parity Act is worded differently than the Federal Parity Act. Instead of generally requiring parity of benefits between mental health and medical or surgical issues, the statute requires health care service plans to "provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses . . . under the same terms and conditions applied to other medical conditions as specified in subdivision (c)." Cal. Health & Safety Code § 1374.72(a).[1] The term "severe mental illnesses" is defined to include anorexia nervosa and eight other illnesses.[2] *Id.* § 1374.72(d)(8). The "terms and conditions" that must be applied equally to mental and physical illnesses "shall include, but not be limited to," maximum lifetime benefits, copayments, and deductibles. *Id.* § 1374.72(c).

The Plan on its face does not discriminate between coverage for mental illness and physical illness. Plaintiff does not dispute that the Plan bars out-of-state treatment for

---

[1] California State Senate Bill No. 855, signed into law on September 25, 2020, amends the California Parity Act in various ways, such as by including a definition of "medically necessary treatment." *See* Act of Sept. 25, 2020, 2020 Cal. Stat. ch. 151 (codified in scattered sections of Cal. Health & Safety Code and Cal. Ins. Code), http://www.leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id =201920200SB855 (last visited Oct. 6, 2020). The amendment applies to health insurance contracts issued, amended, or renewed on or after January 1, 2021, *id.*, and thus does not affect this case.

[2] The others are schizophrenia, schizoaffective disorder, bipolar disorder, major depressive disorders, panic disorder, obsessive-compulsive disorder, pervasive developmental disorder or autism, and bulimia nervosa. Cal. Health & Safety Code § 1374.72(d).

both physical and mental illness.  Instead, she asserts that coverage is required because the treatment was medically necessary, and Optum never disputed that it was.  By arguing that the dispositive question is whether the treatment was medically necessary, Plaintiff, in effect, argues that the California Parity Act guarantees a substantive right to medically necessary treatment of the listed mental illnesses, without any relationship to parity with physical illness.  Her position is not supported by the language and purpose of the statute.

Plaintiff relies on this court's construction of the California Parity Act in *Harlick*, 686 F.3d 699, in support of her position.  However, reading *Harlick* as a whole, it is clear that the California Parity Act does not, as Plaintiff contends, require coverage of G.S.'s treatment solely on the ground that it was medically necessary, without regard to parity.

The question in *Harlick* was whether the insurer, Blue Shield, was required to pay for the insured's treatment for anorexia nervosa in a residential treatment facility.  The insurance plan covered care in skilled nursing facilities for physical illnesses, but it did not cover residential treatment for mental illnesses.  Although  the plan itself did not require coverage of the residential treatment, the court held that coverage was required under the California Parity Act as a "medically necessary treatment" for one of the listed severe mental illnesses.; *Harlick*, 686 F.3d at 719 (discussing Cal. Health & Safety Code § 1374.72(a)).  The court concluded Blue Shield forfeited the ability to assert medical necessity because Blue Shield had denied coverage of the residential treatment solely on the ground that residential treatment was not included in the health plan, rather than on the ground that it was not medically necessary.  *Harlick*, 686 F.3d at 721.

The court thus concluded that Blue Shield was obligated under the California Parity Act to pay for the residential treatment, "subject to the same financial terms and conditions it imposes on coverage for physical illnesses." *Id.* *Harlick* accordingly requires Optum to provide coverage of medically necessary treatment on the same terms and conditions as the coverage Optum provides for physical illnesses.

Plaintiff argues that the only distinction between *Harlick* and this case is that the plan in *Harlick* purported to exclude coverage for any residential treatment, whereas the Plan here excludes coverage for out-of-state residential treatment. However, this distinction is crucial and is what distinguishes this case from *Harlick*. Residential treatment is a type of care, a medically necessary one under *Harlick*, and the Plan covers this care. It is not disputed that the Plan offers coverage for treatment at CFD, an in-state residential treatment center. The out-of-state restriction is a term or condition of the Plan, akin to financial restrictions, that applies equally to mental and physical illnesses. Exclusion of coverage for out-of-state care is not a denial of a medically necessary treatment, but a condition of her HMO Plan. *See* Harold J. Bressler & Rob Borchert, *Health Law & Compliance Update* § 9.02 (2020) (defining an HMO as "[a] health care system that assumes both the financial risks associated with providing comprehensive medical services (insurance and service risk) and the responsibility for health care delivery *in a particular geographic area* to HMO members, usually in return for a fixed, prepaid fee" (emphasis added)).

Plaintiff relies on language in *Harlick* that the California Parity Act "requires coverage for *all* medically necessary treatments for [the listed] illnesses." *Harlick*, 686 F.3d at 716

(emphasis added). She argues that Optum thus was required to cover G.S.'s treatment because Optum never contested that G.S.'s treatment was medically necessary. However, the Plan does cover residential treatment for eating disorders, which is the medically necessary treatment that *Harlick* held must be covered. Plaintiff was given options for residential treatment in California, but she decided that they were unsuitable. In fact, she sent G.S. to the Colorado center before she even asked Optum what options were available in California and after she had been told that her HMO plan did not cover out-of-state care.

*Harlick* did not address a limitation such as the out-of-state exclusion in the Plan because the types of terms and conditions were not at issue in that case. Because the statute lists only financial conditions (maximum benefits, copayments, and deductibles) as examples of terms and conditions that must be applied equally, *Harlick* also focused on financial conditions in its holding. Notably, *Harlick*'s ultimate conclusion was not that the California Parity Act requires coverage of any medically necessary treatment for the listed illnesses, regardless of parity, but that "plans that come within the scope of the Act must cover all 'medically necessary' treatment for 'severe mental illnesses,' . . . *but can apply the same financial conditions* – such as deductibles and lifetime benefits – that are applied to coverage for physical illnesses." *Harlick*, 686 F.3d at 712 (emphasis added).

The list of terms and conditions in the statute is not exhaustive, and the statute does not state that the terms and conditions must be financial in nature. *See* Cal. Health & Safety Code § 1374.72(c) (providing terms and conditions "shall include, but not be limited to" the listed conditions). The Plan's exclusion of coverage for out-of-state treatment

(except for emergency or urgently needed services) is not an exclusion of an entire type of medical treatment like the exclusion of residential treatment centers in *Harlick*. Instead, it is a term or condition, and it is "applied equally to all benefits" under the Plan, in compliance with the statute. *Id.*

The California Court of Appeal also has construed the California Parity Act to require health care plans to cover residential treatment for eating disorders. *Rea*, 172 Cal. Rptr. 3d at 827, 845. Similar to *Harlick*, the court acknowledged that "'medically necessary' coverage is coverage that is nonetheless limited by the policy limits." *Id.* at 840. The court thus rejected Blue Shield's argument that "there is a slippery slope onto which health plans will slide with respect to residential treatment and where the promise of parity can easily turn into the creation of unlimited services," and explained that the California Parity Act "contains no express provision creating such a gateway to unlimited coverage." *Id.*

The Plan complies with *Harlick* by providing coverage for a residential treatment center for anorexia nervosa. There is no dispute that the Plan's limitation for out-of-state treatment applies to any type of treatment, whether for mental health issues or other medical conditions. Plaintiff has not presented any evidence that the Plan's coverage of mental illnesses is less generous than its coverage of physical illnesses, or that the exclusion for out-of-state treatment limits coverage of mental health conditions, but not physical health conditions. The California Parity Act therefore is not implicated here.

**CONCLUSION**

Plaintiff has not shown that the Plan's requirement of in-state treatment is applied to mental health conditions, but not to other medical conditions.  The Plan's geographical limitation accordingly does not violate either the Federal Parity Act or the California Parity Act.

The judgment is **AFFIRMED.**