**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SKY-MED, INC., DBA Pacific International Skydiving Center, *Petitioner*, <br><br> v. <br><br> FEDERAL AVIATION ADMINISTRATION; STEPHEN DICKSON, Administrator, *Respondents.* | No. 18-70306 <br><br> FAA No. 2014-1116 <br><br><br> OPINION |

On Petition for Review of an Order of the
Federal Aviation Administration

Argued and Submitted January 7, 2020
San Francisco, California

Filed July 15, 2020

Before:  J. Clifford Wallace and Michelle T. Friedland,
Circuit Judges, and Timothy Hillman,* District Judge.

Per Curiam Opinion

---

* The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

## SUMMARY**

### Federal Aviation Administration

The panel vacated a decision of the Administrator of the Federal Aviation Administration ("FAA"), and remanded with instructions to dismiss the case for lack of jurisdiction, in a proceeding wherein the FAA sought to impose $55,000 in civil penalties on Sky-Med, Inc. dba Pacific International Skydiving Center ("Pacific") for allegedly conducting unsafe parachute operations on several occasions.

Congress created two tracks for civil penalty proceedings initiated by the FAA for violations of air travel laws and regulations. If the amount of the penalty sought is relatively low, an administrative law judge ("ALJ") in the Department of Transportation can render a decision that is appealed to the FAA Administrator, whose decision is then subject to review by a federal court of appeals. If the amount in controversy exceeds $50,000 for enforcement against small businesses like Pacific, the penalty must be sought in a case filed by the Government in federal district court. 49 U.S.C. § 46301(d)(4).

The FAA brought this enforcement action against Pacific before an ALJ, and it was then appealed to the Administrator. The ALJ and Administrator held that they had the power to adjudicate the action because the FAA initially sent Pacific two separate notices alleging that

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Pacific was liable for civil penalties for different violations, with each notice seeking less than $50,000.

The panel held that because the FAA ultimately pursued penalties through a single Complaint seeking more than $50,000, the only tribunal with jurisdiction to adjudicate the Complaint was a federal district court. Specifically, the panel held that the statute unambiguously establishes that federal district courts have exclusive subject matter jurisdiction over cases like this one. The panel further held that the history of 49 U.S.C. § 46301(d)(4) cuts against the FAA's interpretation. In addition, the panel held that the purpose of the exclusive district court jurisdiction provision would be undermined if the FAA could guarantee an agency adjudicator by simply starting out with a notice of a penalty amount that comports with its preferred forum. The panel concluded that the ALJ and FAA Administrator did not have jurisdiction to resolve the merits of the FAA's allegations.

## COUNSEL

John T. Van Geffen (argued) and Michael L. Dworkin, Avialex Law Group LLP, San Francisco, California, for Petitioner.

Brett D. Weingold (argued), Office of the Chief Counsel, Federal Aviation Administration, Washington, D.C., for Respondents.

**OPINION**

PER CURIAM:

We must decide whether the Federal Aviation Administration ("FAA") proceeded in the correct forum when it sought to impose $55,000 in civil penalties on Sky-Med, Inc., which does business as Pacific International Skydiving Center ("Pacific"), for allegedly conducting unsafe parachute operations on several occasions. Congress has created two tracks for civil penalty proceedings initiated by the FAA for violations of air travel laws and regulations. If the amount of penalty sought is relatively low, an Administrative Law Judge ("ALJ") in the Department of Transportation, of which the FAA is a component, can render a decision that can be appealed to the FAA Administrator (the "Administrator"), whose decision is then subject to review by a federal court of appeals. *See* 49 U.S.C. §§ 46301(d), 46110. If, however, the amount in controversy exceeds a threshold—$50,000 for enforcement against small businesses like Pacific—the penalty must be sought through a case filed by the Government in federal district court. *See id.* § 46301(d)(4).

The FAA brought this enforcement action against Pacific before an ALJ, and it was then appealed to the Administrator. Pacific has now asked us to review the Administrator's decision. The ALJ and Administrator held that they had the power to adjudicate the action because the FAA initially sent Pacific two separate notices alleging that Pacific was liable for civil penalties for different violations, with each notice seeking less than $50,000. We disagree. Because the FAA ultimately pursued those penalties through a single Complaint seeking more than $50,000, we hold that the only tribunal with jurisdiction to adjudicate the Complaint was a federal district court. We therefore vacate

the Administrator's decision and remand with instructions to dismiss.

## I.

Pacific provides skydiving services to the public, including skydiving classes and tandem parachute jumps, in Honolulu, Hawaii.

In March 2014, the FAA sent Pacific a document titled "Notice of Proposed Civil Penalty." *See* 14 C.F.R. § 13.16(f).  This notice stated that, based on an FAA investigation, "it appear[ed] that" during one flight in late 2013 and another in early 2014 Pacific had "conducted parachute operations from [its] aircraft into or through clouds."  If proven, the notice continued, Pacific's actions would have violated two federal regulations: 14 C.F.R. § 105.17, which bars parachute operations "[i]nto or through a cloud," and 14 C.F.R. § 91.13(a), which bars "operat[ing] an aircraft in a careless or reckless manner so as to endanger the life or property of another."  The notice "propose[d] to assess a civil penalty in the amount of $22,000," which reflected $11,000 each for the two alleged violations. Pacific and the FAA discussed the possibility of settlement, but they did not reach an agreement.

Before any further action occurred in connection with this March 2014 notice, in October 2014 the FAA sent Pacific a second "Notice of Proposed Civil Penalty" (collectively, along with the March 2014 notice, the "Initial Notices").  This second notice stated that "it appear[ed] that" Pacific had again violated the regulations referenced in the first notice by conducting parachute operations into or through clouds during six flights in March 2014.  The FAA proposed a total penalty of $33,000 for those six violations, which reflected $5,500 for each violation.

After further settlement discussions between the parties were unsuccessful, the FAA sent Pacific a "Final Notice of Proposed Civil Penalty." *See* 14 C.F.R. § 13.16(g). The Final Notice explained that it was "combin[ing]" the two Initial Notices. And its contents reflected just that: the Final Notice referred to the eight flights described in the two separate Initial Notices, stated that the FAA had "determined" that Pacific had violated 14 C.F.R. §§ 105.17 and 91.13(a) during those flights, and contended that Pacific was liable "for a total of $55,000" in civil penalties—$22,000 for the "case" identified in the March 2014 Initial Notice plus $33,000 for the "case" identified in the October 2014 Initial Notice.

The Final Notice directed Pacific to either pay the $55,000 penalty or request a hearing before an ALJ. Because Pacific requested a hearing, the FAA filed a Complaint in the Department of Transportation's Office of Hearings. *See* 14 C.F.R. §§ 13.16(i), 13.208. Like the Final Notice, the Complaint alleged that Pacific should be required to pay $55,000 in civil penalties for conducting parachute operations into or through clouds during the eight flights—$22,000 for the "case" identified in the March 2014 Initial Notice plus $33,000 for the "case" identified in the October 2014 Initial Notice.

The matter was assigned to an ALJ and given a single FAA docket number. After the parties engaged in discovery, an ALJ conducted a three-day hearing on the matter. Toward the start of the hearing, Pacific's counsel orally moved to dismiss the case, contending—apparently for the first time since the case had been filed—that the amount in controversy "exceed[ed] the jurisdictional limit" for proceeding in that forum and that the case was therefore "void ab initio." The ALJ decided to proceed with the merits

hearing but ordered the parties to submit briefing on jurisdiction after the hearing.

After considering the parties' briefing, the ALJ denied Pacific's motion to dismiss for lack of jurisdiction and issued a ruling on the merits. The ALJ held that jurisdiction turns on the amount in controversy when the FAA "initiates" a civil penalty action. Because each of the two separate Initial Notices had sought penalties of less than $50,000, the ALJ concluded that "the rule conferring exclusive jurisdiction to the United States district courts did not apply when each case was initiated," and that the cases were therefore in the appropriate forum. On the merits, the ALJ concluded that the FAA had demonstrated violations during only three of the eight flights at issue. The ALJ imposed a penalty of $1,375 per violation, resulting in a total penalty of $4,125.

Pacific and the FAA cross-appealed to the Administrator. *See* 49 U.S.C. § 46301(d)(7)(B); 14 C.F.R. § 13.16(j). Pacific reasserted, among other arguments, that the amount in controversy had exceeded the jurisdictional maximum for agency adjudication. The FAA contended that the ALJ had awarded too low a penalty for the three violations the FAA had proven.

The Administrator ruled in favor of the FAA. As to jurisdiction, the Administrator, like the ALJ, reasoned that jurisdiction "depends on the amount in controversy when the Administrator or FAA *initiates* the civil penalty action," which the Administrator viewed as having occurred when the FAA sent the Initial Notices each seeking less than $50,000. On the merits, the Administrator rejected various defenses asserted by Pacific, and then agreed with the FAA that the penalty per violation should be increased, imposing a revised total penalty of $16,500.

Pacific petitioned this court for review under 49 U.S.C. § 46110, again contending that the agency lacked jurisdiction.[1]

## II.

The question whether the ALJ and Administrator had jurisdiction to resolve this case turns on the meaning of 49 U.S.C. § 46301(d)(4). The relevant portion of that statute provides:

> the district courts of the United States have exclusive jurisdiction of a civil action involving a penalty the Secretary of Homeland Security or Administrator of the Federal Aviation Administration initiates if–
>
> (A) the amount in controversy is more than–
>
>> (i) $50,000 if the violation was committed by any person before [December 12, 2003];
>>
>> (ii) $400,000 if the violation was committed by a person other than an individual or small business concern on or after that date; or

---

[1] In the alternative, Pacific presents several challenges to the Administrator's reasoning on the merits. Because, as explained below, we conclude that the agency lacked jurisdiction and that its decision must be vacated, we do not address Pacific's merits arguments.

(iii) $50,000 if the violation was committed by an individual or small business concern on or after that date[.]

49 U.S.C. § 46301(d)(4); *see also* 14 C.F.R. § 13.16(b) (regulation implementing this statutory provision). Subsection (A)(iii) is the portion relevant here, because the alleged violations occurred in 2013 and 2014, and the parties agree that Pacific is a "small business concern."

*Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), prescribes a two-step test for judicial review of agency interpretations of federal statutes. First, "employing traditional tools of statutory construction," we assess "whether Congress has directly spoken to the precise question at issue." *Id.* at 842–43, 843 n.9. If the statute speaks unambiguously to the question at issue, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," the second step of *Chevron* directs us to defer to the agency's interpretation as long as it is "based on a permissible construction of the statute." *Id.* at 843. Applying the first step of *Chevron*, *see City of Arlington v. FCC*, 569 U.S. 290, 307 (2013), we hold that the statute unambiguously establishes that federal district courts have exclusive subject matter jurisdiction over cases like this one.

We start with the text. *See Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011). Again, the statute provides that district courts "have exclusive jurisdiction of a civil action . . . if . . . the amount in controversy is more than" the relevant threshold. 49 U.S.C. § 46301(d)(4). The key phrase is "a civil action." We follow the ordinary legal

understanding of the term "action": a "judicial proceeding." *Action*, Black's Law Dictionary (11th ed. 2019).

Here, there was one such proceeding. There are several indicia of this, including a single Complaint, a single docket number, a single pre-hearing process, and a single hearing before the ALJ, all culminating in a single ALJ decision resolving the merits. And within the single proceeding at issue here, the document setting forth the amount in controversy, from the time the docket was opened to the time the ALJ ruled on the merits, was the single Complaint seeking $55,000 in penalties from Pacific. This was therefore "a civil action" in which the amount in controversy was $55,000—over which federal district courts had exclusive jurisdiction.

The FAA attempts to escape this conclusion by fixating on a single word in the statute. According to the FAA, because the statute refers to "a civil action involving a penalty the . . . Administrator of the Federal Aviation Administration *initiates*," 49 U.S.C. § 46301(d)(4) (emphasis added), the jurisdictional analysis turns on the amount that was in controversy when the action was "initiate[d]." The FAA contends that because the statute is "silent" as to how the FAA initiates a civil penalty action, we must defer, under *Chevron*, to an FAA regulation providing that "[a] civil penalty action is initiated by sending a notice of proposed civil penalty." 14 C.F.R. § 13.16(f). This regulation, in the FAA's view, means that jurisdiction must be determined based only on the contents of a notice of proposed civil penalty, and that the agency had the power to adjudicate this case because there were two separate Initial Notices, each seeking less than $50,000.

The word "initiates" cannot bear the weight the FAA places on it. In this statute, the words "the . . . Administrator

of the Federal Aviation Administration initiates" serve as an adjective phrase modifying "a civil action." 49 U.S.C. § 46301(d)(4) (referring to "a civil action involving a penalty the . . . Administrator of the Federal Aviation Administration initiates"). Thus, "initiates" simply helps identify the type of proceeding at issue: one that has, as relevant here, been initiated by the FAA. "Initiates" does not mean that jurisdiction is cemented based on the amount that was in controversy at the outset of an enforcement effort by the FAA. If Congress had meant that the amount in controversy for purposes of jurisdiction would be set in stone at the time an enforcement action was initiated, we trust Congress would have explicitly tied jurisdiction to what the amount in controversy *was* or *had been* at that specific point in time—rather than referring to what "the amount in controversy *is*." *Id.* § 46301(d)(4)(A) (emphasis added).

This is not to say, however, that timing is irrelevant to jurisdiction. We simply disagree with the FAA's particular way of considering timing. We conclude, based on the plain text, that exclusive district court jurisdiction can be triggered during a window of time, rather than only at a specific point at the outset of an enforcement effort. The statute ties jurisdiction to the amount in controversy in "a civil action," *see id.* § 46301(d)(4), so the window for assessing jurisdiction is the period while that action is pending before the adjudicatory body—which, for an action filed in the Department of Transportation's Office of Hearings, begins with the filing of a complaint and runs through the issuance of the ALJ's final ruling. The relevant question is whether, at any point during that window, the amount in controversy exceeds the applicable threshold for exclusive federal district court jurisdiction. That question can typically be

answered by referring to the operative pleading, which in this case was the single Complaint seeking $55,000.**[2]**

Our conclusion also follows from the meaning of "amount in controversy." "We have defined the amount in controversy as the amount at stake in the underlying litigation," which includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citations, quotation marks, and alterations omitted). Thus, the amount in controversy encompasses the total amount claimed in good faith in a proceeding. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). And we generally calculate the amount in controversy by examining the face of the well-pleaded complaint. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself."). The FAA's interpretation, requiring us to examine only the amount sought in each initial notice of a civil penalty action even when multiple infractions have been consolidated into a single complaint,

---

**[2]** Because the jurisdictional provision at issue in this case does not require us to identify a single point in time when a civil penalty action is "initiated," the regulation to which the FAA urges us to defer, 14 C.F.R. § 13.16(f), is beside the point. We need not and do not address the import of 14 C.F.R. § 13.16(f) in other contexts in which it could be necessary to identify a single event that "initiates" a civil penalty action. *See, e.g.*, 49 U.S.C. § 46301(d)(7)(C) (statute of limitations requiring that agency adjudications generally "not be initiated later than 2 years after the violation occurs"); *see also Royal Avionics Sys., Inc.*, FAA Order No. 2002-6, 2002 WL 1042303, at *3 (Apr. 15, 2002) (FAA Administrator concluding, in a matter that squarely presented the issue, that an action is "initiated" for purposes of this statute of limitations once the FAA issues a notice of proposed civil penalty).

is accordingly contradicted by the most natural understanding of the statutory text.

The history of 49 U.S.C. § 46301(d)(4) also cuts against the FAA's interpretation. Congress has on several occasions reaffirmed a two-track system for adjudicating FAA civil penalties, confirming its purpose to channel higher-stakes disputes to federal district courts through a bright-line rule. For decades after the enactment of the Federal Aviation Act in 1958, "civil penalties for violations within the jurisdiction of the FAA could be imposed *only* by United States District Courts." H.R. Rep. No. 102-671, at 4 (1992), *reprinted in* 1992 U.S.C.C.A.N. 792, 792 (emphasis added). It was not until 1987 that Congress first authorized the FAA to assess civil penalties for violations of the Federal Aviation Act through agency adjudication. *See* Airport and Airway Safety and Capacity Expansion Act of 1987, Pub. L. No. 100-223, § 204(g)–(i), 101 Stat. 1486, 1520–21. That program, which was temporary, provided that the FAA could assess penalties through administrative adjudication in some cases, but that federal district courts would continue to "have exclusive jurisdiction of any civil penalty action initiated by the Administrator" if the action "involve[d] an amount in controversy in excess of $50,000." *Id.* § 204(g), 101 Stat. at 1520. In 1992, Congress enacted a permanent program, which included the same language about exclusive jurisdiction of federal district courts. *See* FAA Civil Penalty Administrative Assessment Act of 1992, Pub. L. No. 102-345, § 2(a), 106 Stat. 923, 923. Since 1992, Congress has made only one substantive change to the amount in controversy provision, when in 2003 it raised the threshold to $400,000 for proceedings against "a person other than an individual or small business concern," while leaving in place the $50,000 limit for individuals and small businesses. *See* Vision 100—Century of Aviation Reauthorization Act, Pub.

L. No. 108-176, § 503(b), 117 Stat. 2490, 2558 (2003). This history confirms that the congressional grant of civil penalty authority to the FAA was meant to be limited, and that the $50,000 ceiling for agency adjudication of cases like this one was designed to have meaningful force.

The purpose of the exclusive district court jurisdiction provision would also be undermined if the FAA could guarantee an agency adjudicator by simply starting out with a notice of a penalty amount that comports with its preferred forum. Suppose, for example, the FAA were to issue a notice of proposed civil penalty alleging forty-nine violations and seeking a penalty of $1,000 per violation, for a total penalty of $49,000. Under the FAA's interpretation, in such a case the FAA's counsel could later request a revised penalty of $10,000 per violation, for a total requested penalty of $490,000, without divesting the agency adjudicators of jurisdiction. Although the FAA's request for an increased penalty in such a hypothetical case might arise because of information learned later rather than as a result of purposeful jurisdictional manipulation, the better reading of the statute forecloses the FAA from seeking such a large penalty in a single administrative proceeding for any reason.

Our interpretation of the jurisdictional statute at issue here is reinforced when we consider the mechanics of a more frequently litigated and thus well understood amount-in-controversy requirement: the $75,000 threshold necessary for diversity of citizenship jurisdiction in federal court. *See* 28 U.S.C. § 1332(a). In a case involving a single plaintiff and a single defendant (like this one), we would aggregate the value of all of the plaintiff's claims to determine whether the jurisdictional minimum was satisfied. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969). A defendant sued in state court who wished to remove the case to federal court could

therefore rely on the total value of the claims advanced—we would not dissect a single complaint into its component parts. *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3725.3 (explaining that when a case is filed in state court and a defendant seeks to remove it to federal court, "[i]t is well-settled that two or more claims asserted by a single plaintiff against a single defendant may be aggregated for purposes of determining whether the jurisdictional amount requirement has been met"). We believe that here, by analogy, the penalties sought in the separate Initial Notices but later pursued through the single Complaint should be aggregated for purposes of determining the forum for adjudicating the dispute.

Moreover, if a case is initiated in state court for a low amount but it later becomes clear that the jurisdictional threshold has been surpassed, defendants may generally remove the case to federal court at that later time. *See* 28 U.S.C. § 1446(b)(3). We again believe 49 U.S.C. § 46301(d)(4) is analogous. If, during a single enforcement proceeding pending before an ALJ, the FAA for the first time seeks penalties totaling more than $50,000, the action must be adjudicated in federal district court rather than remaining in an administrative forum based on earlier allegations that have since become outdated.

In sum, because this case involved a single proceeding during which the operative Complaint sought $55,000, the ALJ and Administrator did not have jurisdiction to resolve the merits of the FAA's allegations.[3]  This conclusion is not altered by the fact that the ALJ and Administrator ultimately imposed a total penalty of less than $50,000, because a higher amount was in controversy even though not ultimately awarded.  *Cf. Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (stating the "well-settled rule that a federal court does not lose jurisdiction over a diversity action" merely because "the amount recovered falls short" of the jurisdictional minimum).

---

[3] We need not address two related issues that may arise in other cases.  *First*, suppose the FAA were to commence more than one agency adjudication against the same party and litigate the adjudications in separate proceedings, but around the same time.  If the total amount in controversy across the adjudications were above the threshold for exclusive district court jurisdiction, a question might be raised about whether the FAA had improperly split up the cases to evade the jurisdictional provision.  *Cf. Cont'l Airlines, Inc.*, FAA Order No. 90-0012, 1990 WL 656265, at *2 (Apr. 6, 1990) (rejecting an airline's contention that the FAA had improperly brought separate cases "to avoid the jurisdictional limit of $50,000").  That is not the issue in this case because this case proceeded as a single action in which the amount in controversy *did* exceed the applicable threshold.

*Second*, suppose the FAA were to start out the same way as in the example just described—by commencing multiple agency adjudications each of which seeks less than the applicable maximum penalty for agency jurisdiction, but that in sum exceed it—and were to then seek permission from an ALJ to consolidate the proceedings.  *Cf.* FAA, Order No. 2150.3C, FAA Compliance and Enforcement Program, ch. 8-11 (Sept. 18, 2018) (providing that the FAA's counsel "may move to consolidate" cases like those described in this hypothetical "for litigation purposes").  We do not decide whether, if a consolidation like this were to occur with an ALJ's approval, the statute would permit continued agency jurisdiction.

### III.

For these reasons, we vacate the Administrator's decision and remand with instructions to dismiss the case for lack of jurisdiction.

**VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS.**